## TOBIN & DUNCAN, Respondents, *v.* POST & UPHAM, Appellants.

In a suit for damages, for the failure of the defendants to deliver goods according to contract, the true rule of damages is the difference between the price agreed between the parties, and the market value of the goods at the time of the breach of the contract.

The admission of testimony to prove the speculative profits of the plaintiff in such actions is error.

Where the contract was for *the cargo*, or all the goods of a given description in a given vessel, and there were no other like goods in the market: Held, that the admission of evidence to show what they were worth in broken parcels was error.

The difference between the value of *the cargo* and the contract price, is the true measure of damages.

APPEAL from the Fourth Judicial District.

The complaint in this case stated, that on the 22d March, 1852, the defendants sold to the plaintiffs an invoice of goods, and gave to said plaintiffs a note of sale thereof, as follows:—

"SAN FRANCISCO, March 22, 1852.

"Sold this day to Tobin & Duncan,      cases of silk goods, 'per Mazeppa,' being the entire invoice of silks, shawls, and satins, marked      ; said invoice is sold T. & D. at 100 per cent. on Chinese cost, being $20,000, more or less.

(Signed)                "G. B. POST & CO."

And in accordance with said note of sale, defendants delivered a part of said goods to plaintiffs, who so received them. But

thereafter, on the 24th March, the defendants wholly declined and refused to deliver the remainder of said goods, though often requested by plaintiffs, who was ready and offered to pay for the same, and had performed all conditions on their part, &c., to their damage, $10,000.

The defendants answered, and deny that they sold, or that plaintiffs purchased, the goods, as set forth, &c., and deny that the defendants delivered any part of said goods, in part performance of the writing set forth in the complaint; deny that they ever refused to deliver the said goods, according to the terms of said writing; deny that plaintiffs were ready or offered to pay according to the terms of the said writing, or that they were willing to accept the said goods, according to the terms thereof, or that plaintiffs had performed, &c.; and set up as a counter claim, arising out of said transaction, that on the 24th March, and since, the defendants were ready and willing, and offered to deliver the goods to the said plaintiffs, the goods in the said writing mentioned, upon the terms therein set forth, but the plaintiffs refused, and had ever since refused, to accept them, and to pay for them, according to the terms of said writing: by means whereof the defendants have sustained damage to the amount of $10,000; and that plaintiffs are further indebted to defendants for goods sold and delivered to them of the value of $3000, and prays judgment, &c.

The principal difficulty in the case, arose out of what constituted the " *Chinese cost*," stipulated to be paid for the goods by the agreement or note of sale. Upon the entry of the goods at the custom-house, an invoice had been filed which amounted to less, by 60 or 70 per cent., than the price demanded by the defendants. The plaintiffs claimed the goods at the former rates. Defendants claimed a higher rate, &c., and examined witnesses to show the actual cost of the goods in China.

The question, however, was not considered in this court. But in the course of the trial below, the plaintiffs called a witness, who testified, that he had been engaged in the Chinese trade; was one of the merchants who appraised these goods; "to the best of my recollection they were the only invoice of Chinese silk goods in the market. I met Tobin (one of the plaintiffs),

and told him of these goods, and that they were suitable for his trade, and advised plaintiffs to buy them. I made a transaction between plaintiffs and Goodall at 125 per cent. advance on Chinese cost. I have been in China three times, four months at a time. I told Tobin these goods were low. I was in the habit of posting him up as to the arrival and value of Chinese goods. They are buying invoices of the importer, and retailing them at auction. Tobin & Duncan could only have supplied themselves at that time with goods like these, by purchasing them at second hand, in broken lots."

The defendants' counsel objected to evidence of the price at which goods are bought and sold in such quantities. The objection was overruled, and exception taken.

The witness proceeds. "The difference of buying by invoice and in broken parcels, is about 50 per cent. These goods could be sold at that advance in small lots. Goodall's lot amounted to $12,000 or $13,000 on Chinese cost."

Another witness being questioned as to the rate of profits of plaintiffs (was objected to, and objection overruled), said: "The plaintiffs sell at an average advance of 50 per cent." The case was given to the jury, and verdict for plaintiff $6469 50, and judgment accordingly.

The court refused a new trial, and defendants appealed.

*Hackett* and *Gale*, for appellants.

*Whitcomb*, for respondents.

MURRAY, Chief Justice, delivered the opinion of the court. HEYDENFELDT, Justice, concurred.

The only error, which we consider it necessary to notice in this case, is the admission of testimony to prove the speculative profits of the plaintiffs.

The true rule of damages was the difference between the price agreed on between the parties, and the market value of the goods at the time of the breach of the contract.

The fact that there were no Chinese goods in the market at that time, corresponding to the description of those sold by the defendants, did not warrant the admission of evidence showing what

they were worth in broken packages, much less the testimony of the plaintiffs' clerk to prove their amount of sales and profits. The value of a cargo of similar goods might have been ascertained by the testimony of competent merchants, and the difference between the value so estimated and the contract price, would have been the true measure of damages.

Judgment reversed, and new trial ordered.