## WILLIAM H. DENNIS v. O. N. STOUGHTON.

*Non-Fulfillment of Contract.     Damages.     Recoupment.*
*Reference.     Set-off.*

The contract was made by letters.   The defendant supposed he had ordered a cider-press with counter-shaft attachment; but when it came he found it was a press with power attachment with chain-belt.   He knew what he had received, and that the price was $28 more than that of the other.   It being late in the season, and his customers pressing him to do their work, the defendant set up and used the press.   The plaintiff, supposing the order to call for the machine which he had sent, gave wrong directions as to the timbers needed in setting it up, and injury resulted in consequence to the defendant.   The defendant wrote asking the plaintiff if he could ship the press "at once"; and the plaintiff replied that he cou'd, "on short notice."   In a few days thereafter, September 4, 1880, the defendant ordered it to be shipped "immediately."   September 13th, he wrote again, saying that he had heard nothing from his order; and September 15th the plaintiff replied that the press would be shipped "that day or the next."   It was not shipped so as to be received until September 30th, 1880.   In an action of assumpsit to recover the price, *Held*,

1. That by setting up and using the press the defendant accepted it.
2. That all the facts show that both parties contemplated an immediate fulfillment of the order to ship the press.
3. That the plaintiff is liable for all damages resulting directly and naturally from his delay in performing the contract, and for his erroneous directions as to using the timbers in setting up the press,—and, hence, is liable for loss incurred in changing the timbers, loss of time of workmen, and loss on the stock; but not for the loss of *custom*, it being too indirect and remote.

Dennis *v.* Stoughton.

4. That, the case having been referred, the pleadings could be amended so as to embrace a plea of set-off, if necessary ; but the defendant may show, *in recoupment*, or reduction of the damages, such damages as he has sustained by a breach of the contract.*

ASSUMPSIT.   Heard on the report of a referee, December Term, 1882, TAFT, J., presiding.   Judgment for the plaintiff to recover $291.75.   The judgment was made up of the price of a cider press, $200 ; power attachment with chain belt, $45 ; interest, $34.64 ; and some other small .items connected with the press.   It appeared that the plaintiff in 1878 had sold to one Ames a cider press with counter-shaft attachment ; that he arranged with Ames to give him a commission of ten per cent. on all presses sold by him, but he had no power to make prices or collect the pay ; that the plaintiff did not begin to manufacture the kind of cider press which he shipped the defendant till about the middle of August, 1880, which press he called " power attachment with chain belt ;" that the only press Ames or the defendant knew about was " with counter-shaft attachment ;" and that, as the referee found :

" Ames from time to time had talk with defendant about selling him one of the plaintiff's presses ; and on the 11th day of August, 1880, wrote plaintiff for prices for the presses, to which he replied Aug. 14th, giving price for No. 3 press $200, and for counter-shaft $17, and stating that he would allow Ames ten per cent. commission for all he could sell when paid for ; and no mention was made in that letter of any other way of applying power to the press except by way of counter-shaft.

" August 30th, 1880, Ames writes plaintiff acknowledging receipt of his letter of Aug. 14th, and stating that he will doubtless receive an order from O. N. Stoughton of Royalton, Vt., for a press, and that he would probably want power attachment.   The only power attachment that Ames then knew about was counter-shaft.

" On the 17th day of August, 1880, the defendant wrote the plaintiff asking for prices for presses to be run by power.   To this letter the plaintiff replied Aug. 26th, 1880, giving the price of No. 3 press at $200, and counter-shaft $17 ; power attachment with chain belt $45, to run presses by power.   Defendant replied Aug. 27th, asking if plaintiff would warrant his No. 3 press of sufficient strength for power attachment, and if so he should use that size ; and asking if plaintiff had the press in store so he could ship at once, also counter-shaft power attachment. Plaintiff replied Aug. 28th, that he would warrant the presses perfect when delivered, and that 'he had the presses, power attachment and counter-shafts at the factory, and can ship them at short notice.'   Defendant then in a short time saw Ames, and directed Ames to order a

* But if a plea of set-off includes *a note*, and therefore separate, independent of the cause of action, that it must be filed *before* reference, see *Fulton* v. *Wiley*, 32 Vt. 762. —REP.

No. 3 press from plaintiff. Ames did not know of this correspondence between plaintiff and defendant, and never knew of it until the commencement of this suit, and did not then know of any other way of applying power to a press except by counter-shaft.

"The defendant intended to have Ames order for him a press, with power applied by way of counter-shaft. The defendant was entirely ignorant of presses and the way they ran except what knowledge he had derived from seeing Ames' press. According to the directions of defendant, Ames, Sept. 4th, 1880, wrote plaintiff to send immediately to O. N. Stoughton, Royalton, Vt., a No. 3 press, also power attachment and everything complete. Ames intended by said letter to order a press with power applied by way of counter-shaft.

"About the middle of August, 1880, the plaintiff began to manufacture in a way to apply power to presses by what he called power attachment with chain belt, which the plaintiff considered preferable to the counter-shaft, and for which he asked $45 ; and the plaintiff supposed, when he received said order in Ames' letter of Sept. 4th, which was after the correspondence between plaintiff and defendant, that what was desired was power attachment with chain belt.

"On the 13th of September Ames wrote to plaintiff as follows : ' I have not heard anything from my order, and I am ready to use it. Please ship immediately to O. N. Stoughton, Royalton, Vt. It was for No. 3 press and power attachment. . . . . Please send dimensions of timber and directions for setting up.' On the 15th of September, 1880, plaintiff wrote Ames that they wrote him from the factory that the press would be sent today or the next, and also enclosed in said letter directions for timbers. It appeared that all of the press which plaintiff was expected to furnish were the irons, leaving the defendant to make the timbers and put up the press, and defendant employed Ames to do this.

"The directions in reference to timbers could only be used with a press with power attached by way of counter-shaft, and could not be used with press where power is applied by means of power attachment with chain belt. The defendant had arranged with Ames, who was a mechanic, to get out said press timbers, and set up said press. Immediately after receipt of letter of Sept. 15th, said Ames began making said timbers according to said directions, and completed the same ; and some portion of the press not having arrived, said Ames left off work and went home, and returned Sept. 30th, and then found that plaintiff sent power attachment and chain belt instead of counter-shaft, as he, Ames, expected would be sent.

"The defendant claimed that he should be chargeable with only $17 for the power attachment with chain belt, instead of $45 as charged in the bill, and should be allowed for extra expense of putting up the press and loss of time by workmen and their board, $50, and by loss by not having the press, loss of custom and loss of stock on hand, $25.

"In reference to first item claimed by defendant I find that $17 was the price of the attachment by counter-shaft, which defendant and Ames both supposed they had ordered and were to have, and that they used the power attachment sent because the same came so late in the season that they were compelled to use it or forego having any press that season. As to the second item, I find that the defendant kept his help from day to day, expecting the press would come each day, until he expended the amount charged. As to the third item, I find that defendant incurred the loss charged by reason of the delay in sending forward the press

and attachments. The plaintiff had informed both Ames and defendant about the time of the order, that he had counter-shaft and power attachment, and could forward the same on a few days' notice ; and plaintiff testified that he expected he would have been able to have forwarded the same on two or three days' notice. The delay was occasioned by the fact that the chain belt was a patented article, and only manufactured at one place, and plaintiff was delayed in procuring it. As soon as he could procure it the same was forwarded. These facts were known to plaintiff but were not known or communicated to defendant or Ames."

The other facts are stated in the opinion of the court.

*D. C. Denison & Son*, for the defendant.

We submit that the defendant, under the facts, is bound only to pay for the press and power attached by counter-shaft ; and that whatever damage was occasioned to him by the unreasonable delay in delivering the property purchased and for the erroneous directions he would be entitled to recover of the plaintiff. In either view, the report shows the tender to be abundantly sufficient and judgment should be entered for defendant to recover his costs. *Hubbard* v. *Fisher*, 25 Vt. 539; *Keyes* v. *Slate Co.* 34 Vt. 81; *Allen* v. *Hooker*, 25 Vt. 137; *Thompson* v. *Congdon*, 43 Vt. 396.

*Lamb & Tarbell*, for the plaintiff.

The defendant had his choice to decline to receive the goods, offer to return them, and give immediate notice of a rescission of the contract, or to keep them and pay the contract price. 2 Kent, 470; *Boughton* v. *Standish*, 48 Vt. 594; *Gilson* v. *Bingham*, 43 Vt. 410 ; 14 Conn. 414; *Esty* v. *Rand*, 29 Vt. 278; 26 Vt. 87 ; 48 Vt. 83.

The opinion of the court was delivered by

Ross, J. The defendant supposed he had ordered a press with counter-shaft attachment. When it came he found it was a press with power attachment with chain-belt. He knew what he had received and what the plaintiff's price was for the same ; that the power attachment with chain-belt was forty-five dollars, while with counter-shaft it was but seventeen dollars. By setting up and using the press and power attachment with chain-belt he accepted

the same, and bound himself to pay the price which he knew the plaintiff asked for that kind of press and attachment. That he was induced to accept it by the stress of circumstances in which he was placed, did not qualify the acceptance, nor lessen, nor modify, the legal effect thereof. That he notified the plaintiff of the mistake, and that the plaintiff undertook to give him leave to exchange the attachments, do not vary the legal relations of the parties. He set up the press with the power attachment sent before he received the plaintiff's letter giving him leave to exchange, and still retains and uses the power attachment with chain-belt. Under these circumstances, the plaintiff has the right to recover the price which the defendant knew he asked for the press and power attachment when he received and accepted the same. *Gilson* v. *Brigham*, 43 Vt. 410.

II. During the negotiations, which were carried on by letters, the defendant asked the plaintiff if he had the presses and countershaft power attachments in store so that he could ship at once. The plaintiff replied that he had the presses, power attachments and counter-shafts at the factory and could ship on short notice. In a few days thereafter, the defendant ordered the press and power attachment to be sent immediately. This was September 4, 1880. September 13, 1880, the defendant wrote the plaintiff that he had heard nothing from his order, to ship immediately; that he was ready to use it, and asked for directions in regard to the timbers to be used in setting up the press. He received a reply September 15, saying that the press would be shipped that day, or the next, and also giving directions in regard to the timbers required. The defendant went immediately about making preparation to set up the press. The press was not shipped complete so as to be received until September 30th. The directions in regard to the timbers, given in the plaintiff's letter of September 15, were for those necessary for the counter-shaft attachment. The plaintiff then understood the defendant's order to call for the power attachment with chain-belt, and by some mistake gave the wrong directions. On these facts the defendant contends that the press and power attachment were not shipped so early as required by the contract; that he suffered damages by the non-fulfillment

in this respect, on the part of the plaintiff; and that he should be allowed to reduce the amount of damages due the plaintiff by the amount of damages he has sustained by the extra expense in putting up the press, and loss of time of his workmen, and in loss of custom, and loss of stock on hand. The referee has found that the defendant sustained damages in all these respects. The plaintiff claims that, inasmuch as no definite time was agreed upon for the shipment of the press and power attachment, he cannot be held liable for damages occasioned by the delay. When no definite time is fixed by the contract in which an act thereby agreed to be done is to be performed, the law implies it is to be performed within a reasonable time. In determining what is a reasonable time, regard is to be had to the circumstances and what the parties, from what passes between them, do or have a right, acting as prudent men, to understand is a reasonable time for performance. The defendant inquiring of the plaintiff if he had the presses in store so that he could ship at once, his order to ship at once, and immediately, as he wanted the press to use, as well as the defendant's reply that he had them at the factory and could ship on short notice, and that it would be shipped that day or the next,— all show that both parties contemplated an immediate fulfillment of the order. The fact that the plaintiff had to send to Chicago for the power attachment with the chain-belt and was delayed in obtaining the same, not communicated to the defendant, neither before nor when the order was received and accepted by him, does not vary the legal relations of the parties in regard to the time in which the plaintiff was bound to fill the order and ship the press. The plaintiff was made aware that the defendant was ready to use the press, and that he was preparing to set it up as soon as received. This being the legal relation of the parties in regard to the time of the performance of the contract by the plaintiff, he must be held liable to the defendant for all damages resulting directly and naturally from his delay in the performance thereof. It is contended by the plaintiff that he was under no obligation, by the terms of the contract, to give defendant directions in regard to the timbers he would need to set up the press. It would be naturally expected by a purchaser, when the machine

purchased is to be set up in a particular manner to do good and effective work, that the vendor would furnish directions in that particular. In the case at bar, the defendant called upon the plaintiff for such directions, and he furnished them without objection. It is too late for him, after the directions have been treated by both parties as a part of the contract and acted upon, as the plaintiff had every reason to suppose they would be, to contend that they are not a part of the contract. We think that the plaintiff is liable to the defendant for the loss incurred by him in changing the timbers, and for the loss of time of his workmen, and for the loss on his stock, occasioned by the plaintiff's breach and non-fulfillment of the contract, in giving erroneous directions, and by unreasonable delay in shipping the press. The loss of custom, we think, is too indirect and remote to be allowed as the direct and natural result of the plaintiff's non-performance of the contract.

The plaintiff further contends that the defendant cannot be allowed these damages in this suit, which is said to be assumpsit in the common counts, with no plea filed except the general issue. It is the general doctrine in regard to judgments on referees' reports, announced in repeated decisions of this court, that the judgment shall be in accordance with the facts reported, if the pleadings can legally be so amended as to accommodate themselves to, and include, the facts reported. There can be no doubt but that the pleadings could be legally amended in this case so as to embrace a plea of set-off in assumpsit founded on a breach of the same contract in suit, nor that the defendant would be entitled to recover these damages under such plea. But we do not think such plea necessary to entitle the defendant to the allowance of these damages in this suit. They arise out of the same contract on which the plaintiff grounds his right of recovery. When a defendant is sued for a breach or enforcement of a contract, he may show, in recoupment or reduction of the damages which the plaintiff is entitled to recover, such damages as he has sustained by the plaintiff's breaches of the same contract. *Hartland* v. *Henry*, 44 Vt. 593 ; *Davenport* v. *Hubbard*, 46 Vt. 200.

The defendant paid into court, under the rule, after this suit

was brought, two hundred dollars to cover the amount which he conceded the plaintiff was entitled to recover, and his costs of suit, to the time of the payment. If the defendant is allowed to reduce the amount due from him to the plaintiff for the press and power attachment with chain belt, by the amount of the damages which we hold he is entitled to for the plaintiff's failure to perform his part of the contract, it is conceded that the sum thus paid into court is sufficient to cover the balance due the plaintiff and his costs of suit to the time of such payment into court. On this state of the law and facts, the plaintiff is entitled to the sum paid into court as tender of amends and costs in this suit, and the defendant is entitled to recover his costs since the time of such payment.

The judgment of the County Court is reversed, and judgment is rendered that the plaintiff is entitled to the two hundred dollars paid by the defendant into court, and for the defendant to recover his costs since such payment.