Anderson vs. Sloane and others.

72 566
74 479
72 566
76 13
72 566
78 97
72 566
83 312
72 566
86 277
72 566
92 218
72 566
100 186
72 566
113 ²502
72 566
52 LRA 36n
52 LRA 52n

ANDERSON, Respondent, vs. SLOANE and others, Appellants.

*October 15 — November 8, 1888.*

TRESPASS TO PERSONALTY: EXECUTION: DAMAGES. *(1) Seizure of stock of goods under executions afterwards set aside: Defense. (2) Measure of damages: Interest: Value of business: Depreciation in goods: Expenses of recovery: Costs paid: Attorney's fees: Supposed loss of profits: Loss by voluntary assignment: Injury to feelings.*

1. Judgments and executions which have been set aside are no defense to the parties who caused them to be entered and issued, in an action subsequently brought to recover damages for the seizure of property under such executions.

2. In an action to recover damages for the wrongful seizure of plaintiff's stock of goods in his store under executions, it appeared that the sheriff closed the store and held the goods therein for twenty-six days, and then delivered them to the plaintiff or his assignee; that immediately after the seizure the plaintiff made a voluntary assignment for the benefit of his creditors; and that the defendants (who had caused the executions to issue) had acted in good faith, without malice or intent to oppress the plaintiff, in an attempt to collect their debts in what they were advised was a legal way. The judgments and the executions under which the goods were seized had been set aside before the commencement of the action. *Held,* that the damages recoverable by the plaintiff should be restricted to the following items: (1) Interest on the value of the goods during the time they were held by the officer, or, in lieu thereof, at the option of the plaintiff, the value of his business during that time; (2) any depreciation in the value of the goods during that time; (3) any expenses the plaintiff was put to in obtaining a return of the goods. This last item would include the amount he was compelled to pay for the costs included in the illegal judgments and the sheriff's fees charged for executing the illegal executions; also any expenses to which the plaintiff had been put by way of rent or use of store and clerk's hire during the time the defendants had possession of the store, and the amount necessarily expended for counsel and attorney's fees in the proceedings to set aside the judgments and executions. He could not recover for any supposed loss of profits from the interruption of his business, for any losses which may have occurred to him by reason of his assignment, or for injury to his feelings.

APPEAL from the Circuit Court for *Dane* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was commenced to recover damages for seizing a stock of goods of the plaintiff upon certain executions issued upon judgments entered upon warrants of attorney to confess judgments signed by the plaintiff in favor of *Sloane & Co.* and *John V. Farwell & Co.* There were two executions issued, for the aggregate sum of $5,159.98. By virtue of these executions the sheriff of La Crosse county levied upon the stock of goods of the plaintiff of the alleged value of $27,000, and the sheriff closed the doors of the store, and held the goods by virtue of such seizure and the possession of said store for the period of twenty-six days. At the expiration of that time the claims of the said *Sloane & Co.* and *Farwell & Co.*, together with the costs of the sheriff upon said executions and the costs included in the several judgments, were satisfied, and the goods were returned to the assignee of the plaintiff; he having before that date made a voluntary assignment of all his property for the benefit of his creditors.

Before the claims of *Sloane & Co.* and *Farwell & Co.* were satisfied, the plaintiff in this action made a motion in the circuit court of La Crosse county to set aside and vacate the judgment and execution in the case of *Sloane and others v. Anderson,* on the ground that the same were void for irregularities in entering the same, and the circuit court had denied the plaintiff's motion. From the order denying such motion the plaintiff appealed to this court, and upon such appeal this court reversed such order, and directed the circuit court to enter an order vacating and setting aside both the judgment and execution. See *Sloane v. Anderson,* 57 Wis. 123, 137.

In the present action the plaintiff made all the members of the firms of *Sloane & Co.* and *Farwell & Co.* defendants,

as well as their respective attorneys. The sheriff was not made a party.

The complaint in this action alleges that certain of the defendants were members of and composed the firm of *W. & J. Sloane;* that other defendants named were members of and composed the firm of *John V. Farwell & Co.;* alleges the membership of the firms of the respective attorneys of said *Sloane & Co.* and *Farwell & Co.*, who acted for them in entering the judgments and causing executions to be issued thereon; that they were authorized to act for such firms, respectively, and do the things complained of by the plaintiff. The complaint further alleges that the plaintiff, at the time said executions were issued and his stock seized thereon, was a prosperous merchant, carrying on a large retail business, and that his annual cash sales for the previous year exceeded $52,000, from which he received a net profit of at least $5,000. That he was in good credit, and was worth $15,000 over and above his debts and liabilities, and that the stock of goods in his store was worth $27,000. The complaint then alleges that no part of $3,378.28 owing to the defendants *W. & J. Sloane & Co.* was due at time the judgment was entered and execution issued thereon, except the sum of $663.03 and interest. It then alleges the entry of judgment for the whole sum with interest and $199.14 costs, and that execution for that sum and interest was issued on the judgment; and that on the same day, of the debt owing to *John V. Farwell & Co.* of $1,757.08, no part was due except the sum of $439.27, and that judgment was entered up and execution issued for the whole amount, together with $117.41 costs. The remainder of the complaint is as follows:

" That there was no affidavit as to the amount due or to become due, attached to the complaint or judgment roll in said proceedings, as required by law. That the said pretended judgment was entered for the entire indebtedness,

when only a portion, to wit, the sum of $439.27 and interest, was due, and the warrant of attorney or authority for confessing judgment did not authorize the entry of judgment for any amount before the same became due. That said judgment was irregular and void. That said court commissioner had no jurisdiction or authority to sign the same.

"That on the said 28th day of September, 1881, the said defendants *Cameron, Losey & Bunn,* by order and direction of said *Curtis II. Remy,* and by order and direction of said defendants *W. & J. Sloane* and *John V. Farwell & Co.* wrongfully and unlawfully issued executions out of said circuit court on said several judgments for the full amount of damages and costs aforesaid, to the sheriff of La Crosse county, which said executions, though regular in form so as to protect the said sheriff, were unauthorized and void. That Mark M. Buttles, the then sheriff of La Crosse county, on said 28th day of September, 1881, under and by virtue of the said executions, which were both delivered to him at the same time, and under and by virtue of the orders and directions of the said defendants *Cameron, Losey & Bunn,* and of the defendants *Curtis II. Remy* and *W. & J. Sloane* and *John V. Farwell & Co.,* and in the absence of this plaintiff from the city of La Crosse, he having left this city at the express request of the said defendant *Curtis II. Remy,* who was acting in behalf of said defendants *W. & J. Sloane* and *John V. Farwell & Co.,* the said sheriff, without the plaintiff's consent, levied upon, seized, and took possession of the entire stock of goods, fixtures, and furniture and store of this plaintiff, occupied by him under lease, and situated on the southwest corner of Main and Third streets in the city of La Crosse, and seized and took the keys of said store, and turned out and caused to be removed from said store the clerks and customers of this plaintiff, and shut up the said store, and stopped all trades and sales therein for and

during the space and time of twenty-five days, to his damage the sum of $5,000, the said stock of goods and fixtures and furniture being then and there worth the sum of $30,000.

"That in consequence of said wrongful levy and seizure and closing up of plaintiff's store, other creditors of this plaintiff, in order to protect their interests and secure their claims against this plaintiff, commenced several suits, proceedings, and attachments, and obtained and entered judgments against this plaintiff, which suits, proceedings, and judgments would not have been had or brought but for the said wrongful acts of the defendants, and this plaintiff was thereby put to great cost and expense over and above his indebtedness, to wit, the sum of $500. That said wrongful acts of the defendants, in entering said judgments and seizing said stock of goods and closing said plaintiff's store, injured the credit of this plaintiff and his business, and resulted in a great loss in the profits of his business, and prevented him from selling his said goods and stock at a profit, or at all; and, for the purpose of protecting himself and his creditors, he was in consequence of said acts of the defendants compelled to and did on the 29th day of September, 1881, make an assignment of all his property to John M. Holley, assignee, for the benefit of all his creditors. That, had it not been for the said wrongful acts of the said defendants in entering judgments, issuing executions, and seizing the plaintiff's stock of goods, the plaintiff could and would in the regular course of business have paid all his indebtedness, without cost or expense. That the costs of said assignment, including assignee's fees, attorney's fees, and extra employees, amounted to the sum of $3,000, which amount was paid by the plaintiff or incurred by him. That for the purpose of raising funds to pay off the indebtedness of the plaintiff the said assignee was compelled to and did sell goods and stock in trade of the plaintiff, which cost the

sum of $22,000, at a loss of $5,000, when, in the regular course of trade and business, the plaintiff could and would have made a profit of $4,400; to his damage of $9,400. That by reason of said wrongful acts of the defendants, and the injury to his credit and business, his annual sales have been reduced from $52,000 to $26,000 per year; to his damage $5,000. That the said John M. Holley, assignee of the plaintiff, was compelled to pay and did pay to the defendants *Cameron, Losey & Bunn* upon said executions, in order to obtain possession of said goods and stock in trade and store of this plaintiff, the sum of $5,883.23; $572.15 of which sum was costs and sheriff's fees on said illegal judgments and executions.

"That afterwards, and before the commencement of this action, the judgments and executions aforesaid were, by order of the circuit court of La Crosse county, by direction of the supreme court of this state, duly set aside and vacated. That afterwards, and before the commencement of this action, the said John M. Holley duly assigned and transferred to the plaintiff all claims and demands and rights of action arising or growing out of the transactions and payments hereinbefore set forth; and that the said plaintiff has settled with his creditors, except the defendants *W. & J. Sloane* and *John V. Farwell & Co.*, and the said assignee has been duly discharged. That before the commencement of this action the plaintiff duly demanded of said defendants *Cameron, Losey & Bunn* the said sum of $5,883.23, paid by his said assignee to them as aforesaid, and they refused to pay the same or any part thereof.

"That plaintiff's credit and business has been injured and damaged by the aforesaid unlawful acts of the defendants in the sum of at least $10,000.

"The plaintiff further shows unto the court and alleges that the defendant *Curtis H. Remy*, as attorney of the defendants constituting the firm of *W. & J. Sloane*, by falsely

representing that the said firm had lost a certain note there-tofore given them by this plaintiff and that he was credit-man of said firm, procured the signature of ·this plaintiff to the notes upon which said judgment in favor of the members of said firm against the plaintiff was rendered, without knowledge on the part of the plaintiff that said notes contained a warrant of attorney, and as agent and attorney of the defendants constituting the firm of *John V. Farwell & Co.*, falsely represented that he was simply the friend of the credit-man of *John V. Farwell & Co.*, and that said firm desired their account to be represented by notes, procured the signature of plaintiff to the notes run-ning to *John V. Farwell & Co.*, on which the judgment in favor of that firm and against the plaintiff was entered. This plaintiff alleges that he did not know that said notes contained a warrant of attorney authorizing the entry of judgment without notice to plaintiff, and that all the de-fendants except the defendants *Cameron, Losey & Bunn*, who acted as agents and attorneys of the other defendants in obtaining the said notes, causing judgments to be entered thereon, and executions to be issued upon said judgments, and the plaintiff's property to be seized and held on said executions, wilfully and maliciously intended to overreach and oppress this plaintiff and break up his business. That the acts and doings of the defendant *Curtis H. Remy* were, before the commencement of this action, fully known to, and were ratified by, the defendants constituting the firms of *W. & J. Sloane* and *John V. Farwell & Co.*"

The defendants answered, admitting the partnership of the respective parties as stated in the complaint, and the authority of the several attorneys to act on behalf of said firms in the premises, as also alleged in the complaint. They admit the entry of the judgments and the issuing of the executions, as alleged in the complaint, and the amounts due and to become due at the times said judgments

were entered up and executions thereon issued; but allege on information and belief that the judgments were regular and lawfully entered up, and that the executions were fair and regular on their face and lawfully issued on said judgments. They also admit that such executions and judgments were afterwards set aside by the order of the circuit court of La Crosse county. They deny that at the time such judgments were entered and executions issued the plaintiff was a prosperous merchant, and allege that his credit was then impaired, and his failure imminent; that on the 26th day of September, 1881, a judgment by confession had been entered in favor of one O. R. Keith & Co. against the plaintiff for $1,137.40, and execution had been issued thereon. The defendants allege that they were not jointly interested in the judgments and executions entered and issued in their favor, respectively, but that each proceeded in their own behalf. They admit that the plaintiff made a voluntary assignment, as alleged in his complaint, but deny that it was necessitated or caused by the acts of the defendants. They allege that the seizure of the plaintiff's property under and by virtue of said executions was made in good faith, and for the sole purpose of securing the payment of the sums of money mentioned therein, then due and owing to them, respectively, and which, owing to the insolvent condition of said plaintiff, they were in great peril of losing.

The defendants then allege that after the seizure of said goods they released said goods and delivered them to the assignee of the plaintiff, in consideration of certain notes delivered to them by said assignee, and that such arrangement was made with the assent of the circuit court, obtained by such assignee for that purpose, and that such surrender was made by the defendants, and the notes received for the respective sums due to them, with the full knowledge and

assent of the plaintiff, and under an agreement with the said plaintiff and his assignee that all claims of the plaintiff growing out of such seizure of his property upon such executions should be considered fully satisfied and discharged thereby.

The case was tried in the circuit court, and resulted in a judgment in favor of the plaintiff for the sum of $10,572.15 damages, and the costs of the action. From this judgment the defendants appeal to this court.

*S. U. Pinney* and *A. L. Sanborn*, for the appellants, cited as to the measure of damages, besides cases cited in the opinion: Sedgw. on Dam. 69 *et seq.; Schooner Lively*, 1 Gall. 315, 325; *The Anna Maria*, 2 Wheat. 327; *Del Col v. Arnold*, 3 Dall. 333; *The Amiable Nancy*, 3 Wheat. 546, 558; *La Amistad de Rues*, 5 id. 385; *Hadley v. Baxendale*, 26 Eng. L. & Eq. 398; *Walker v. E. R. Co.* 63 Barb. 260; *Jacobus v. Monongahela Nat. Bank*, 35 Fed. Rep. 395; *Burton v. Holley*, 29 Ala. 318; *Mitchell v. Harcourt*, 62 Iowa, 349; *Drake v. C., R. I. & P. R. Co.* 63 id. 302; *Great Western Printing Co. v. Tucker*, 73 id. 755; *Plumb v. Woodmansee*, 34 id. 116; *Winslow v. Lane*, 63 Me. 161; *Howe Machine Co. v. Bryson*, 44 Iowa, 159; *Townsend v. Nickerson Wharf Co.* 117 Mass. 501; *Benson v. Malden & M. Gas Light Co.* 6 Allen, 149; *Talcott v. Crippen*, 52 Mich. 633; *Allis v. McLean*, 48 id. 428; *Myers v. Farrell*, 47 Miss. 281; *Marqueze v. Sontheimer*, 59 Miss. 442; *Atkinson v. Morse*, 57 Mich. 276; *Callaway Mining and Mfg. Co. v. Clark*, 32 Mo. 305; *Lewis v. Atlas M. L. Ins. Co.* 61 id. 534; *Williamson v. Barrett*, 13 How. 101, 110–114; *Rhodes v. Baird*, 16 Ohio St. 573; *Eisenlohr v. Swain*, 35 Pa. St. 107; *Rogers v. Bemus*, 69 id. 432; *Pennypacker v. Jones*, 106 id. 237; *Fleming v. Beck*, 48 id. 309; *Landes & Co. v. Eichelberger*, 2 Tex. Civ. Cas. 127; *Tucker v. Hamlin*, 60 Tex. 171, 174; *Internat. & G. N. R. Co. v. Benitos*, 59 id. 326; *Houston, E. & W. T.*

*R. Co. v. Adams,* 63 id. 200; *De La Zerda v. Korn,* 25 Tex. 188; *Newbrough v. Walker,* 8 Gratt. 16; *James v. Adams,* 8 W. Va. 568.

The weight of authority is against the allowance, as damages, of attorneys' and counsel fees for procuring the discharge of an illegal levy or attachment. *Jacobus v. Monongahela Nat. Bank,* 35 Fed. Rep. 395; *Haverstick v. Erie Gas Co.* 29 Pa. St. 254; *Good v. Mylin,* 8 id. 51; *Stopp v. Smith,* 71 id. 285; *McDaniel v. Crabtree,* 21 Ark. 431; *Plumb v. Woodmansee,* 34 Iowa, 116; *Heath v. Lent,* 1 Cal. 412; *Oelrichs v. Spain,* 15 Wall. 211, 230.

The costs included in the judgments and the sheriff's fees on the executions were paid with a full knowledge of the facts, without protest, and when there was no pretense of existing duress of goods. They cannot, therefore, be recovered back. *Schultz v. Culbertson,* 46 Wis. 316; *Parcher v. Marathon Co.* 52 id. 388; *Custin v. Viroqua,* 67 id. 320; *Rutledge v. Price Co.* 66 id. 35; *Fleetwood v. New York,* 2 Sandf. 476, 480; *Brisbane v. Dacres,* 5 Taunt. 143; *Supervisors v. Briggs,* 2 Denio, 26, 39; *Robinson v. Charleston,* 2 Rich. 317; *Silliman v. Wing,* 7 Hill, 159.

For the respondent there was a brief signed by *Quarles, Spence & Dyer,* of counsel, and the cause was argued orally by *M. P. Wing* and *J. V. Quarles.* They contended, *inter alia,* that the plaintiff could recover as damages the profits lost by reason of the interruption to his business. *Chapman v. Kirby,* 49 Ill. 211; *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318, 329, 332; Drake on Attach. sec. 175 *et seq.; Jolly v. Single,* 16 Wis. 280; *Kinney v. Crocker,* 18 id. 74; *Gates v. N. P. R. Co.* 64 id. 71; *Nebraska City v. Campbell,* 2 Black, 592; *Terre Haute v. Hudnut,* 112 Ind. 542; *Alexander v. Jacoby,* 23 Ohio St. 358; *Strasburger v. Barber,* 38 Md. 105; *Goebel v. Hough,* 26 Minn. 252; *Moore v. Schultz,* 31 Md. 418; *U. S. v. Behan,* 110 U. S. 344; *Chandler v. Allison,* 10 Mich. 460; *Haynes v. Knowles,* 36 id. 410; *Llum*

*v. Stein*, 68 Tex. 608; *Sturgis v. Frost*, 56 Ga. 188; *Shafer v. Wilson*, 44 Md. 268; *Schile v. Brockhaus*, 80 N. Y. 614; *Wakeman v. Wheeler & W. Mfg. Co.* 101 id. 209; *Lawrence v. Hagerman*, 56 Ill. 74; *Poposkey v. Munkwitz*, 68 Wis. 322. As to the costs included in the void judgments, the expenses of the assignment, and the attorneys' fees incurred in vacating the judgments, they cited Drake on Attach. sec. 745; 2 Suth. on Dam. 62, and note; 2 Greenl. on Ev. sec. 456; *Lawrence v. Hagerman*, 56 Ill. 74; *Trapnall v. McAfee*, 3 Met. (Ky.), 34; *S. C.* 77 Am. Dec. 153, and note; *Swift v. Plessner*, 39 Mich. 178; *Wilson v. Root*, 43 Ind. 493; *Walser v. Thies*, 56 Mo. 80; *Alexander v. Jacoby*, 23 Ohio St. 358; *Phelps v. Coggeshall*, 13 La. Ann. 440; *Brandon v. Allen* 28 id. 60.

TAYLOR, J. The principal grounds of error alleged are as follows: (1) It is claimed that the judgment should have been in favor of the defendants, for the reason that the judgments and executions upon and by virtue of which the plaintiff's goods were seized were simply voidable and not void, and until set aside were a perfect justification to the sheriff executing the same and to the defendants in whose favor they were issued. (2) That upon the question whether there had been an accord and satisfaction by agreement between the plaintiff and defendants for any damages the plaintiff might have suffered by the seizure of his goods upon the executions, if they should be held void, the verdict should have been in favor of the defendants. (3) That the rule for assessing the damages, if the plaintiff was entitled to recover any, as submitted to the jury by the learned circuit judge, was erroneous and contrary to law.

Upon the first point made by the learned counsel for the defendants, we think the circuit court ruled correctly. The fact appeared upon the trial that these judgments, and the executions issued thereon, had been set aside by the circuit

court, either because they were void or voidable, long before this action was commenced. In such case it is immaterial for what cause they were set aside. When once set aside, they can no longer be set up by the party causing the same to be entered and issued, as a defense for anything done under them. Whether they would protect the sheriff for what was done by him before they were set aside and vacated, is not a question in this case. It clearly appears from the opinion of this court in *Sloane v. Anderson,* 57 Wis. 123, that the judgment and execution in that case was set aside because the judgment was entered for more than there was due to the plaintiffs, and because there was no sufficient affidavit of indebtedness as required by the statute. These defects in the proceedings have always been held sufficient grounds for setting aside a judgment on confession in this court. See *Dilley v. Van Wie,* 6 Wis. 206; *Blaikie v. Griswold,* 10 Wis. 293; *Second Ward Bank v. Upman,* 14 Wis. 596; *Van Steenwyck v. Sackett,* 17 Wis. 645; *Remington v. Cummings,* 5 Wis. 138, 142. The courts of this state, on motion, exercise an equitable supervision and control over judgments entered upon warrants of attorney. *Reid v. Case,* 14 Wis. 429; *Jones v. Keyes,* 16 Wis. 562; *Brown v. Parker,* 28 Wis. 21; *McCabe v. Sumner,* 40 Wis. 386. The judgments and executions having been set aside in these cases, there can be no defense to the parties plaintiff in them for the acts done under them. *Simpson v. Hornbeck,* 3 Lans. 53, 55; *Williams v. Riel,* 5 Duer, 601, 603; *Holloway v. Turner,* 6 Q. B. 928, 929.

The second point made, it seems to us, was, under the evidence, a mere question of fact for the jury; and the jury, under proper instructions from the court, have found against the claim of the defendants. This question, it appears, was submitted to the jury upon an instruction asked by the learned counsel for the defendants, and as the evidence upon the claim made by the defendants was not so clear as

to justify the court in taking the question from the jury, the verdict must be taken as conclusive upon the parties.

The remaining question is whether a proper rule of damages was laid down by the learned circuit judge on the trial of this action. To determine that question it becomes necessary to understand just what the nature of the action is, as disclosed by the evidence on the trial. In the complaint there were allegations which, if established by the evidence on the trial, would probably have brought the case within the rule of damages established in cases for malicious prosecution. After all the evidence was before the court, the learned circuit judge very properly held that there was no sufficient evidence of malice on the part of the defendants to justify the jury in giving damages on that ground. The learned judge on the trial, after the plaintiff had introduced all his evidence, and in reply to the counsel for the defendants, who stated that the plaintiff was claiming punitory damages, made the following statement: "They have now rested their case, and I do not think there is a shadow of testimony that would warrant the recovery of punitory damages in this case; but I am inclined to think for the present that they may recover the actual damages, if they sustained any, growing out of this levy, if it has not been settled." In his instructions to the jury the learned judge said, speaking of the claim for exemplary damages: "The plaintiff would have no right to recover, in any event, exemplary damages by way of punishment of the defendants, unless he established by the testimony substantially what is alleged in the complaint, that these judgments were entered and executions issued and levied maliciously, for the purpose of overreaching and oppressing the plaintiff and breaking up his business. I do not think there is any evidence tending to establish this claim. It is for the court to withdraw any claim from a jury when there is no evidence tending to prove it."

Anderson vs. Sloane and others.

The evidence in the case, as said by the learned circuit judge, excludes from it all considerations of malice or intent to overreach or oppress the plaintiff by the action of the defendants. The case must therefore be treated as an honest, but illegal, attempt on the part of the defendants to collect their claims of the plaintiff by due process of law. They must be treated as having acted in good faith, and under the advice of at least very reputable attorneys of this court.

In this view of the case, we are constrained to hold that a proper rule for assessing the damages of the plaintiff was not adopted on the trial. Under the instructions of the court the plaintiff was allowed to recover as damages (1) the attorney's fees and commissions included in the judgments of confession, and paid by the plaintiff in order to get a return of the property levied upon; (2) the expenditures of the plaintiff for the service of his attorneys in the circuit and supreme courts, in getting the judgments and executions set aside; (3) the whole expenses of the assignee under the assignment, including a large sum claimed to have been paid by the assignee, in conducting and closing up the assignment, for attorney's fees; (4) the probable profits the plaintiff would have made, from the time of the seizure of his stock of goods until the end of one year after the remnant of the goods were delivered to him by the assignee; (5) for loss because the assignee was forced to sell the goods not in the usual course of trade. The court also submitted to the jury that they might in their discretion allow damages for injury to the feelings of the plaintiff. The jury found a verdict for the plaintiff for the sum of $10,572.15. They stated that $3,000 of this was for loss of profits during the time specified; $572.15 for the attorney's and sheriff's fees included in the judgments and on the executions. They did not find anything as compensation for the plaintiff's injured feelings, so that the $7,000 must have

been allowed for the expenses of the assignment, and for loss on the goods by forced sale by the assignee. The counsel for the defendants excepted on the trial to the evidence offered tending to prove loss of profits, also to the evidence of the expenses of the assignment, the evidence as to the loss by forced sale of the goods by the assignee, and his expenses for attorney's fees in executing his duties as assignee, as well as to the instructions of the court to the jury upon these questions.

As was said by the learned circuit judge, the action was for the commission of a trespass by the defendants in seizing and holding the goods of the plaintiff under the irregular and void executions for the period of twenty-six days, and, substantially, that it was a trespass without malice or any illegal design on the part of the defendants. Under these circumstances, we are clearly of the opinion that the latitude allowed by the learned circuit judge for assessing damages was unwarranted, and worked great injury to the defendants. This case, as submitted to the jury upon the evidence, is substantially the same as to facts as the case of *Beveridge v. Welch*, 7 Wis. 465. The only difference between the case of *Beveridge v. Welch* and the case at bar is in the form of the action, and the fact that in the *Beveridge Case* the sheriff was made the defendant, instead of the plaintiffs in the execution. In *Beveridge v. Welch* the action was replevin for the goods, and to recover damages for their wrongful seizure and detention. The grounds of the action in that case were such that the execution in the hands of the sheriff furnished him no protection, and he was therefore liable to the same extent for any damages which his acts caused the plaintiff as the plaintiffs in the execution would have been had they directed the acts to be done by the sheriff. In that case the sheriff took the property of the plaintiff, not upon an execution against him, but upon an execution against a third person. There was

enough evidence in that case to exonerate the sheriff from
all malice or intentional wrong-doing in the case, but the
jury found he had made a mistake in seizing the property
of the plaintiff instead of the property of the defendant in
the executions, and he was therefore held liable to respond
in damages to the plaintiff; and the material question was
as to the damages the plaintiff was entitled to recover. In
that case the sheriff had seized goods of the plaintiff of the
value of $6,000, and had detained them from the plaintiff
sixteen days. The goods were a stock of goods kept by
the plaintiff in a country store. The plaintiff recovered
$500 damages for the taking and detention of the property
by the defendants. The goods themselves were delivered
to the plaintiff by virtue of the writ of replevin. In re-
versing that judgment this court said: "The jury gave the
respondent $500 damages for the wrongful taking and de-
tention of the goods by the sheriff, who had them in his
possession for the period of not exceeding sixteen days.
The stock of merchandise taken was such as is usually kept
in a country dry-goods store, and was valued by the jury
at $6,000. The goods were not removed from the building,
were carefully handled, and placed· in a pile in the store,
where they remained until the respondent replevied them,
or obtained possession of them by commencing this action.
The respondent was deprived of the use and control of his
goods for sixteen days, and, according to the most favor-
able rule, the measure of damages in this case would be
the legal interest upon the value of the property while it
was out of his possession, and compensation for any depre-
ciation in the value of the goods replevied, and the neces-
sary expense of placing the goods in their proper place;"
citing for authority for this rule, *Graves v. Sittig*, 5 Wis.
219; *Morris v. Baker*, 5 Wis. 389; and *Gordon v. Jenney*,
16 Mass. 465. The facts of the case are almost identical
with the facts in the case at bar. In this case the defend-

ants caused to be seized upon their executions, not the property of a stranger, but the property of the defendant in the executions, a stock of goods worth $27,000.  They did not remove them from the shelves in the store, but closed the store, and held them without injury for twenty-six days, and then delivered them to the assignee of the plaintiff, at the request and with the assent of the plaintiff.  In both cases the evidence disclosed that the defendants acted without malice or intent to oppress or injure the plaintiffs; in the former case under a mistake of fact, and in the present case under a mistake of law.

It is evident that, if the court laid down the proper rule for assessing the damages in the case of *Beveridge v. Welch,* then the rule laid down by the learned circuit judge in this case is radically wrong.  It is urged, however, on the part of the learned counsel for the respondent, that the rule as stated in the *Beveridge Case* has been greatly modified, if not abolished, by this court in subsequent decisions, or, if not, that the facts in the case at bar are not similar to the facts in that case, and so the rule there laid down has no application.  We think it will be found by an examination of the subsequent cases in this court, which are said to establish a different rule from that in the *Beveridge Case,* that they are all cases dependent upon an entirely different state of facts, and that in none of them has the soundness of the decision in the *Beveridge Case* been questioned.  The cases relied upon in this court as changing the rule in the *Beveridge Case* are *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318; *Jolly v. Single,* 16 Wis. 280; *Kinney v. Crocker,* 18 Wis. 74; *Gates v. N. P. R. Co.* 64 Wis. 71; and *Poposkey v. Munkwitz,* 68 Wis. 322.  That the cases of *Shepard v. Milwaukee G. L. Co., Jolly v. Single,* and *Kinney v. Crocker* were not supposed by this court to have changed the rule as laid down in the *Beveridge Case* upon a case presenting similar facts, is evident from the subsequent decision of

this court in *Bonesteel v. Orvis*, 22 Wis. 523, 525, where that case is cited in the opinion of this court as establishing the proper rule upon the facts stated. The subsequent cases of *Gates v. N. P. R. Co.* and *Poposkey v. Munkwitz, supra*, were cases dependent upon an entirely different state of facts.

We do not see that the facts in the case, so far as they relate to the acts of the defendants, differ from those in the *Beveridge Case*. There being no malice or wrongful intent to oppress the plaintiff, they proceeded to collect their debts, as they supposed, in a lawful way, under the advice of learned counsel, and ordered the goods of the plaintiff seized, upon what they were advised were valid judgments and executions. It turns out that, upon an examination of such judgments and executions by this court, it was adjudged that they were irregular and void. The justification for taking the goods fails, but in the absence of malice or bad motives they stand precisely in the same position that the sheriff did in the *Beveridge Case*, and it seems to us that because results to the plaintiff followed in this case which do not appear to have followed in the *Beveridge Case*, that does not change the rule. That the rule laid down by this court in the *Beveridge Case* is fully sustained by the great weight of authority, by the decisions of other courts, is clearly established by the numerous authorities cited by the learned counsel for the appellants in the very able brief presented by them on the hearing of this appeal, some of which are here cited: *Bierbach v. Goodyear Rubber Co.* 54 Wis. 208, 211; *Blair v. M. & P. du C. R. Co.* 20 Wis. 262; *Masterton v. Mount Vernon*, 58 N. Y. 391, 396; *Higgins v. Mansfield*, 62 Ala. 267; *Holliday v. Cohen*, 34 Ark. 707, 710, 711; *Heath v. Lent*, 1 Cal. 412; *Tobin v. Post*, 3 Cal. 373; *Oviatt v. Pond*, 29 Conn. 479; *Water Lot Co. v. Leonard*, 30 Ga. 560, 567, 577; *Green v. Williams*, 45 Ill. 206; *Cilley v. Hawkins*, 48 Ill. 308; *Chicago City R. Co. v. Howison*, 86 Ill.

215; *Glass v. Garber*, 55 Ind. 336; *Western G. R. Co. v. Cox*, 39 Ind. 260; *Campbell v. Chamberlain*, 10 Iowa, 337; *Lowenstein v. Monroe*, 55 Iowa, 82; *Washington Ice Co. v. Webster*, 62 Me. 341, 362; *Boyd v. Brown*, 17 Pick. 453, 461; *Brown v. Smith*, 12 Cush. 366; *Simmer v. St. Paul*, 23 Minn. 408, 410; *Cincinnati v. Evans*, 5 Ohio St. 594, 605; *Bates v. Clark*, 95 U. S. 209; *Smith v. Condry*, 1 How. 28; *Bazin v. Steam-Ship Co.* 3 Wall. Jr. 229, 242; *Wallace v. Finberg*, 46 Tex. 36, 48; *Miller v. Jannett*, 63 Tex. 82; *Weeks v. Prescott*, 53 Vt. 73, 74; *Dennis v. Stoughton*, 55 Vt. 371, 377.

Many more cases might be cited, but it seems to us that those cited are quite sufficient to support the rule stated in *Beveridge v. Welch* and *Bierbach v. Goodyear Rubber Co.*, *supra*, that in an action to recover for an illegal seizure of goods of the plaintiff, when no malice is proved or any intent to oppress the party whose goods are seized, no damages can be assessed for supposed loss of profits from the interruption of the business of the plaintiff. We think the verdict of the jury in this case is very convincing proof that the rule of this and other courts in limiting the range of the jury in the assessment of damages in cases of this kind to such as can be readily ascertained by certain proofs, and not permitting them to wander into matters which are purely speculative, and which may or may not have been occasioned by the acts of the defendants, is a most salutary rule. The plaintiff having, immediately after the seizure made by the defendants, of his own motion made a voluntary assignment, he cannot charge any losses which may have occurred to him thereby to these defendants. We think it is purely a conjecture, and not a fact proved by the evidence in this case, that such assignment was caused by the acts of the defendants, or that it was not, under all the circumstances, the best thing for the plaintiff that such assignment was made. If it was not the best thing to do, the defendants are not responsible, as they did not do it or

in any legal sense cause it to be done. If it was the best thing to do, then they ought not to be mulcted in damages because it was done. That the defendants cannot be charged with losses, if any, resulting from such assignment, seems clear to us. See *Walker v. Fuller*, 29 Ark. 448, 458, 459; *Donnell v. Jones*, 13 Ala. 490, 513.

If under any circumstances the jury might consider in assessing damages that the business and trade of the plaintiff had been injured and interrupted by the acts of the defendants, we cannot see upon what grounds they are to be chargeable with the supposed loss of profits the plaintiff would have made after the goods had been returned to him, or how, in estimating such loss of profits, they were authorized to estimate the losses occurring within about two years after the goods had been returned to the plaintiff or to his assignee. The learned circuit judge appreciated the difficulties attendant upon giving such latitude to the jury, and remarked on the trial, to the offers of evidence on the part of the plaintiff tending to show that his business had not been as successful after the return of the goods as before they were seized: "You cannot get any definite or strict rule to guide the jury, and it may be a question how far the party may suffer injury, and testimony must be taken on the question and submitted to the good sense of the jury." Damages which are so uncertain and indefinite, and which depend mainly upon the acts of the plaintiff himself, after the defendants have ceased to have any control over his property or his acts, are of too vague and indefinite a character to be estimated by the jury.

We think in assessing the damages in this case the jury should be restricted to the following items. The goods seized having been delivered to the plaintiff long before this action was commenced, their value cuts no figure in the case except as they bear upon the other items of damages. *First*, the plaintiff should recover interest on the value of the

goods seized, from the time of the seizure until the same were delivered to the plaintiff or to his assignee; or, at the option of the plaintiff, in lieu of such interest, he may recover as damages the value of his business during said time; *second*, for any depreciation in the value of the goods during the same time; and, *third*, for any expenses the plaintiff was put to in obtaining a return of the goods. This last item would include the sum of $572.15, which he was compelled to pay for the costs included in the illegal judgments, and the alleged sheriff's fees charged for executing the illegal executions. It would also include any expenses to which the plaintiff had been put by way of rent or use of store and clerk's hire during the time the defendants had possession of the store. And under this item of expenses we are inclined to hold that the plaintiff may recover any money he may have necessarily expended for counsel and attorney's fees in the proceedings to set aside the illegal judgments and executions. The learned counsel for the appellants have cited several cases in England and in the United States which hold that these expenses are not recoverable in an action of trespass for injury to the property of the plaintiff. These decisions go mainly upon the nature of the action, and rest upon the right to recover in the given form of action. In *Holloway v. Turner*, 6 Q. B. 929, 930, the court say that these expenses cannot be recovered in that action, but it is expressly stated that the plaintiff might recover such costs in a proper form of action. The American cases cited proceed upon the same ground. In this state, and under the Code, there seems to be no good reason why they may not be recovered in the same action, when the facts are properly stated in the complaint. See subd. 1, sec. 2647, R. S.

No damages should be allowed for injury to the feelings of the plaintiff. Injury to the feelings is not a legitimate item of damages in any action for an injury to personal prop-

erty, when such injury is not malicious and is not accompanied by insult. *Donnell v. Jones*, 13 Ala. 490. No damages should be assessed in consequence of the voluntary assignment, either for the expenses of the assignment or by supposed losses by forcing the goods upon the market, nor for loss of profits of business for any time after the goods were restored to the plaintiff or his assignee.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.