DEXTER & CARPENTER, INC. *v.* FILLMORE & SLADE.

Special Term at Rutland, November, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed February 12, 1918.

*Sales of Personal Property—Contract Price.*

Under a contract for the sale of personal property the vendees are by law bound to pay the contract price, and their expectation, when they received the property, that the price would be less does not affect the vendor's rights in the matter.

In an action in contract to recover for two carloads of coal sold and delivered by plaintiff to defendants, it was not error to instruct the jury that if the coal was received and used by defendants after they received a letter from plaintiff in which it stated the price per ton, the defendants were bound to pay that sum per ton as the contract price.

ASSUMPSIT, in the common counts. Plea, the general issue. Trial by jury at the June Term, 1917, Bennington County, *Slack, J.*, presiding. Verdict for plaintiff. Defendants excepted. The opinion states the case.

*Holden & Healey* for defendants.

*Collins M. Graves* for plaintiff.

If a person sending or delivering goods names a price, and the one to whom they are delivered accepts the goods and deals. with them as his own, a sale for the price named is implied. 35 Cyc. 59; *Yeager Milling Co.* v. *Brown,* 128 Mass. 171; *Boughton* v. *Standish,* 48 Vt. 594; *Barnes* v. *Shoemaker,* 112 Ind. 512, 14 N. E. 367.

WATSON, C. J.    The only question in dispute in this case is the price per ton to be paid for two carloads of coal received by the defendants from the plaintiff, the latter contending it was to be six dollars, and the former that it was to be five dollars.

It appeared that on November 14, 1916, the plaintiff sold to defendants two cars of coal which it then stated were at or near Rotterdam Junction, New York, for the price of six dollars and fifty cents per ton. The plaintiff, at that time, gave defendants the numbers of said two cars and agreed to deliver the cars to the defendants. Immediately on the same day the plaintiff instructed the agent of the railroad at that place to forward those two cars of coal to the defendants, but they were never delivered. No claim was made by either party at the trial of this case that the defendants had at any time purchased of the plaintiff any coal except the two cars mentioned. Defendant Slade testified that during the negotiations for this coal, the plaintiff offered bituminous coal at the mines at five dollars a ton, and that in response to such offer he told the plaintiff that they could not use any of that coal, and besides the price was too high.

Nothing thereafter took place between the parties until November 22, following, when the invoice of another car of coal was sent by the plaintiff to the defendants with the price therein stated to be .six dollars per ton; and on the 27th of the same month an invoice of still another and different car of coal was sent with the same price per ton stated therein. Both invoices were received by the defendants before the arrival of the cars to which they related. The evidence showed that the car referred to in the invoice of November 22, was shipped from the mines November 24, and the car invoiced November 27 was shipped from the mines the day it was invoiced, both consigned to the defendants. On November 28, defendants wrote the plaintiff that these cars were not shipped so as to be considered "quick coal" and must apply as coal from the mines, taking the price of five dollars per ton. Following the receipt of this letter, the plaintiff, on November 29, wrote the defendants that it would be impossible to make the price five dollars per ton, but would make it six dollars. This letter was received by defendants before the arrival of the coal. These two cars of coal were received and accepted by the defendants some time in December, 1916; and the parties had no further communication with· each other until after the defendants had used the coal.

Defendant Slade, when testifying for the defence, was asked in direct examination if this coal was received under the expectation that five dollars per ton would be the price. Objection being made, the evidence was excluded and exception saved. In this ruling, there was no error. The defendants were by law bound to pay the contract price; and their expectation, when they received the coal, that the price would be less, does not affect the plaintiff's rights in the matter.

Defendants excepted to the charge that (in effect) if the coal was received and used by the defendants after they received the plaintiff's letter of November 29, in which the price was stated to be six dollars per ton, the defendants are bound to pay that sum per ton as the contract price. ˙ This exception is without force. It seems from defendants' own showing that on November 14, the time when the plaintiff offered to let them have coal at the mines for five dollars a ton, the offer was at once rejected by them. So if this offer was ever made, (which was denied by plaintiff,) its immediate rejection ended it. It had no connection with the later proposition to let the defendants

have the two cars of coal which they received and used, at six dollars per ton. The latter was an independent matter. When defendants received this coal they knew it was not the coal first contracted for by them, and they knew the plaintiff's price for it. By accepting and using the coal, defendants bound themselves to pay the price which they knew the plaintiff asked for it. *Dennis* v. *Stoughton*, 55 Vt. 371.

It is urged that the price of the coal was a question for the jury. But this is not so. The price was exclusively fixed in the invoices and in the letter of November 29. The defendants' acceptance thereof was by their unequivocal acts of receiving and using the coal, with full knowledge of the plaintiff's price therefor. It was a question of law for the court.

*Judgment affirmed.*