## SUMMERS *v.* HEARD.

### Opinion delivered February 18, 1899.

1. PARTNERSHIP—RIGHTS OF PARTNER.—One who enters into a partnership with another thereby acquires an equity to compel the application of the firm's assets to the payment of debts of the firm, and to have the surplus thereafter remaining applied to a debt due to himself on partnership account and to an adjustment of balances and cross-demands between his co-partner and himself, and, upon a dissolution of the partnership, to have his proportionate share of the assets remaining on hand. (Page 559.)

2. EXECUTION—SALE OF PARTNER'S INTEREST.—Where the interest of a partner in the firm assets has been levied on under execution, and his co-partner has given the officer notice of his claim therein, the officer cannot sell such interest until it has been ascertained and set apart by equitable proceedings, in the manner provided by Sand. & H. Dig. § 3065. (Page 559.)

3.  DAMAGES—SALE OF PARTNERSHIP ASSETS.—By the unlawful sale of a
    firm's assets under execution against a member thereof, the other mem-
    ber is damaged, not only by the loss of his individual interest in the
    surplus of the firm's assets after its debts are paid, but also by the loss
    of his equity to have such assets applied to payment of the partnership
    debts, including any debts due himself on the partnership account.
    (Page 560.)

4.  PARTIES—WAIVER OF DEFECT OF.—While all the partners should be
    joined in an action for damages for taking partnership property on ex-
    ecution against one partner individually, a defect of parties in this re-
    spect will be waived by failure of the defendant to take advantage of
    it by demurrer or answer. (Page 560.)

5.  CONTRACT—CONSIDERATION.—A verbal promise by one about to become
    a partner to pay individual debts of his co-partner, made without con-
    sideration, is not binding. (Page 560.)

6.  MORTGAGE—TENDER.—A creditor's lien under a bill of sale intended as
    security cannot be enforced against the purchaser of a half interest in the
    property subject to the lien who tenders the amount of the debt secured
    and keeps his tender good. (Page 561.)

7.  CONVERSION—DAMAGES.—In the absence of any allegation and proof of
    special damages, the measure of damages for the conversion of a stock
    of goods is the value of the goods at the time and place of the conver-
    sion, with six per cent. interest thereon from that time. (Page 562.)

Appeal from Monroe Circuit Court.

JAMES S. THOMAS, Judge.

*J. C. Hawthorne, J. N. Cypert* and *Grant Green, Jr.*, for
appellants.

The appellants acted in good faith and without malice.
Therefore the court's instructions as to examplary damages
were erroneous.    39 Ark. 387; 35 Ia. 306; 3 Suth. Dam. 472.
The true measure of damages was the value of the property,
with interest.    39 Ark. 387; 29 Ark. 448; 63 N. W. 737; 59 N.
W. 387; 49 Pac. 910; 3 Suth. Dam. 472–5, 491; 527–8, 572.
The sixth instruction given for appellee was erroneous.    Ap-
pellee's knowledge put him on notice of the fraud of the transfer
to him.    58 Ark. 446; 21 S. W. 1026; 50 Tex. 106; 42 Minn.
519; 39 Am. Rep. 481; 56 Mo. App. 541; 86 Mich. 556; 79
Wis. 1.    The agreement to sell the goods, pay himself out of
the proceeds, and return the balance, was fraudulent.    49 Cal.
620; 55 Wis. 181; 1 L. R. A. 336; 32 L. R. A. 33, 40, note,
41, note; 38 Atl. 991.    Appellee's attempt to buy an interest

in the business, without having the proceeds paid on debts of the business, was fraud on the creditors. 58 Ark. 446; 50 Ark. 320; 55 Ark. 579; 11 Fed. 559; 52 Ark. 556; Big. Fraud, 288. If appellee mixed and confused the new goods which he bought with the stock, so that they were not distinguishable, the whole stock was subject to appellant's claim. 52 Mass. 493; 3 N. Y. 379; 1 Am. & Eng. Enc. Law, 57, and note; 49 Ark. 457; 60 Ark. 425; 11 So. 946.

*N. W. Norton, Parker & Parker*, for appellees.

The officer, after being notified that the property was that of the partnership, had no right to do more than take an inventory. Sand. & H. Dig. § 3062. Appellant's statement of the rule as to measure of damages only applies to cases where the business is not broken up. 59 Miss. 430; 23 O. St. 358; 1 Suth. Dam. 98–99, 121–2; 3 Suth. Dam. 153, 475–6; 80 N. Y. 614; 11 Mich. 542; 14 *ib.* 34; 32 *ib.* 77; 82 Am. Dec. 679; 23 S. W. 474; 16 S. W. 1101; 46 Fed. 927; 52 N. W. 609. Exemplary damages proper. 44 Ark. 486; 1 Suth. Dam. 720, 723, 724, 725, 729.

*J. C. Hawthorne*, for appellants, on motion for rehearing.

The instruction of the court as to "actual damages," in which the court directed the jury that, in addition to the value of the property at time of seizure and interest thereon, they might assess "such further sum as you will find from the proof that the plaintiff had sustained from being deprived of his business," is abstract and erroneous.

*Parker & Parker* and *Norton & Prewett*, for appellee, on motion for rehearing.

Appellee was entitled to compensation for the injury done his business. 72 N. W. 553; 49 Pac. 911; 2 N. W. 847. Where one is engaged in a prosperous business, the damage occasioned him by seizing his goods is not measured simply by the value of the goods. 14 Mo. 104; 61 N. Y. 245; 60 N. Y. 448.

BATTLE, J. This action was instituted by S. F. Heard against Summers & Watson and others to recover damages

caused by a constable, W. M. Graham, one of the defendants, levying on and selling a stock of drugs and other goods belonging to a partnership, composed of himself and O. F. Jenkins, or Jenkins' wife, to satisfy an execution in favor of the defendants, Summers & Watson, and against O. F. Jenkins, as well as executions in favor of others and against the same person. Plaintiff alleged in his complaint that, on or about the 13th day of April, 1895, he was in possession of a stock of drugs and other goods in the town of Clarendon, in this state; that he was the owner of one-half of such stock, and the other half was pledged to him as security for money loaned; that O. F. Jenkins, or his wife, owned the latter half, subject to the pledge; that, on the day before stated, the defendant, W. M. Graham, as constable of Cache township, in Monroe county, had in his hands sundry executions issued by a justice of the peace against O. F. Jenkins, and in favor of different persons, the defendants Summers & Watson being of the number; that Graham undertook to levy the executions upon the stock in his possession, when he asserted his right thereto, and the defendants Summers & Watson, Parker C. Ewan, J. P. Lee and M. J. Manning, executed and delivered to the constable a bond, whereby they agreed to indemnify him against all damages which he might sustain in consequence of the seizure and sale of the goods, and to pay to any claimant of the stock any damages he should sustain by reason of such seizure and sale under executions; that the constable seized the goods; that, within fifteen days thereafter, the plaintiff gave him notice that the goods so seized were partnership property, and in part belonged to the plaintiff; and that the constable, disregarding his claim and rights, sold the stock under the executions. Plaintiff further alleged that the goods so sold were worth the sum of $1,500, and that he was damaged by reason of such seizure and sale in the same amount; and he asked for judgment for $3,000.

The defendants, answering, denied that plaintiff was in possession, or the owner, of the stock of goods, and admitted the issue of the executions, the levy thereof, the claim by plaintiff, the execution of the bond to indemnify, the notice to the constable by plaintiff, and the sale, and denied that the goods were of the value of $1,500. Answering further, they

alleged: "That O. F. Jenkins was indebted to the defendants, Summers & Watson, W. N. Wilkerson & Co., and other creditors, and that claims amounting to five hundred dollars were in the hands of Ewan, Manning & Lee for the purpose of collection, and that in October, 1894, the said O. F. Jenkins, for the purpose of securing the payment of said sums, pledged all of said goods to the defendants; that the plaintiff's agent soon thereafter came to Clarendon, and was advised of the financial condition of Jenkins, and also that the goods were in the possession of Ewan, Manning & Lee as collateral security for the payment of the claims held by them; that he thereupon agreed to pay the claims held by Ewan, Manning & Lee, and also all other indebtedness of said O. F. Jenkins, and to become the owner of one half interest in the stock of goods in consideration therefor; that, notwithstanding this agreement, he disregarded it, and pretended to purchase one half interest in said stock of goods for the sum of five hundred dollars, but only paid two hundred and fifty dollars thereon; that he knew, at the time of the purchase, that the goods were pledged to the defendants, and that Jenkins held the property as their agent; that, for the purpose of further complicating the affairs of the said Jenkins, and aiding him to defraud his creditors, he induced said Jenkins to make and deliver to his wife, Mrs. C. W. Jenkins, a bill of sale of the other half interest in the stock of goods, and then induced the wife to pledge the said goods to him as security for money that he had originally agreed to pay for the one half interest to which he claimed title; that the pledge was made without consideration, and that the consideration for the purchase of the goods was made for the purpose of defrauding the creditors of Jenkins; that there was no consideration moved from Mrs. C. W. Jenkins to her husband for the transfer of the portion of the goods; that the defendant O. F. Jenkins and his wife were insolvent. The plaintiff knew these facts, and entered into the transaction with them for the purpose of, and with a view to, defeating the claims of the creditors."

. The issues in the action were tried by a jury. Evidence was adduced at the trial tending to prove substantially the following facts: In October, 1894, O. F. Jenkins was doing a

mercantile business in Clarendon, in this state, selling drugs and other goods. He was much in debt. Ewan, Manning & Lee, a firm of lawyers, held for their clients claims against him amounting to $295.12. To secure these claims, he executed to them a bill of sale, whereby he bargained and sold to them his stock of goods. This was on the 30th of October, 1894. In December following, S. F. Heard, through his agent, Cicero Heard, entered into negotiations with Jenkins for the purchase of one-half interest in his stock of goods and a partnership in his business. On the 19th of the same month, he promised Ewan, Manning & Lee that he would form no partnership with Jenkins until Jenkins' debts were paid. On the 19th of December, 1894, Heard purchased of Jenkins one-half of his stock of goods, and formed a partnership with him in the business in which Jenkins was at the time engaged. On the 20th of the same month, he paid to Ewan, Manning & Lee $200 on the bill of sale, in part payment of the claims held by them, and at other times paid ninety-five dollars to. other creditors. About the last of February, 1895, Ewan, Manning & Lee received the claim of W. N. Wilkerson & Co. against Jenkins for $224.53, and Heard promised to pay it. In the meantime, Heard, having ascertained that the stock of goods purchased was not as large or valuable as represented, and that Jenkins' indebtedness was much larger than he said it was, offered to rescind their contract; and Jenkins refused, but in lieu thereof agreed with Heard to take, and did accept, the $295 paid to his creditors in full payment of the amount to be paid for one-half of the goods and for the partnership business. Afterwards Jenkins sold, or pretended to sell, the other half interest in the goods and partnership to his wife for $100, taking her note for the purchase money. On the 4th of March, 1895, Jenkins and his wife mortgaged his or her half interest in the goods to Heard, to secure him in any advances he might make in carrying on their business. In the course of time, the new firm, of which Heard was a member, added to their stock new goods of the value of about $800, and owed for them about the same amount, including $157.40 advanced by Heard. Finally, after some delay, Heard refused to pay the claim of W. N. Wilkerson & Co., or any other claims against Jenkins. Summers & Watson

and other creditors thereupon obtained judgments by confession against Jenkins before a justice of the peace, and caused executions to be issued upon the same, and placed them in the hands of W. M. Graham, a constable, to serve. To induce the constable to seize the goods of Jenkins & Heard to satisfy the executions, Summers & Watson, Parker C. Ewan, J. P. Lee and M. J. Manning executed to him a bond of indemnity in the manner and to the effect stated in the complaint. Graham, the constable, then seized the goods of Jenkins & Heard. Within fifteen days after this, Heard notified the constable that he had seized the partnership property of Jenkins & Heard, and that one-half belonged to him, and that the other half was held by him in trust; and he tendered to Ewan, Manning & Lee the balance of ninety-five dollars due on the claims which the bill of sale was executed to secure, and they refused to accept it. The constable disregarded his notice, and refused to surrender the possession of the property seized, but sold it under the executions. The value of the goods sold were variously estimated at $400 and $1,400.

Evidence was adduced at the trial tending to prove that the purchase by Heard from Jenkins was made in good faith, and was also adduced tending to prove that it was fraudulent and void. One witness testified that Jenkins & Heard were doing a profitable business at the time their property was seized, but the evidence does not show the damage suffered, further than the value of the goods sold.

The court instructed the jury, in part, as follows: "The court instructs the jury that a partner has no such beneficial interest in the chattels of the firm as will be bound by a general lien of an execution against him individually. His interest is subject to the paramount claims of the creditors of the firm, and a surplus only would be subject to individual debts, and then only by following statutes providing for such cases, and not by sale under execution."

"Under the law, partnership property cannot be sold under execution against individual members of the firm if the other members of the firm notify the officer in writing of his claims and interests. All an officer can do in such a case is to take an inventory of the property, and have it appraised, and then

return the inventory and appraisement with the execution. If, instead of so doing, he proceeds to advertise and sell the property, he is a trespasser, and is liable for actual damages, or actual and exemplary damages.

"If, in this case, you find from the proof, by a preponderance, that Heard and Jenkins were partners, or that Heard and Jenkins' wife were partners, in the property seized, and that, within fifteen days after the seizure, Heard, in writing, notified the defendant, Graham, or his deputy making the levy, that such goods were partnership property, and that he (Heard) was a joint owner and partner therein, and that defendant, Graham, or his deputy, after such notice, proceeded to advertise and sell the property, the plaintiff is entitled to receive both actual and exemplary damages.

"Fraud is never presumed, but must be proved by the party alleging it. One engaged in business, though insolvent, has the right, like any other person, to dispose of the whole or any part of the business, and the purchaser will have a good title, unless the sale was made with the intent on the part of the seller to defraud his creditors, and the fraudulent purpose was participated in by the purchaser; and Heard's purchase of the half interest must be upheld, unless by preponderance of proof you find that Jenkins, in selling to Heard the half interest, intended to defraud his creditors, and that Heard participated in the fraud."

In this connection the court further instructed the jury "that every sale and conveyance made by the parties with the intent to hinder, delay or defraud creditors in the collection of their debts is fraudulent and void as to such creditors, whether such sale or conveyance is made with or without a valuable consideration therefor."

Many other instructions were given, but it is not necessary to set them out in this opinion.

The defendants asked, and the court refused to give, the following instructions: "If the jury find from the evidence that the plaintiff, Heard, undertook to purchase the stock of drugs in controversy, or an interest therein, subject to the bill of sale held by the defendants to secure the payment of certain debts due from O. F. Jenkins to his creditors, which debts

plaintiff agreed to pay, and with the understanding between him and the defendants that he should acquire no interest therein until said debts were paid, and further find that, before the debts secured by the bill of sale were paid, other claims of O. F. Jenkins came into the hands of the defendants for collection, and that the plaintiff agreed to pay said claims upon the same terms that he had agreed to pay the claims mentioned in the bill of-sale, he could not afterwards acquire a title from Jenkins to said property superior to that of the defendants until the claims which he had assumed to pay where satisfied."

"If the jury find from the evidence that Jenkins had pledged the stock of drugs for the payment of said debts held by the defendants, Ewan, Manning & Lee, against said Jenkins, and that the plaintiff, Heard, was fully advised of the same, and then said Heard purchased said drugs or an interest in the same, he bought subject to the prior rights of the pledgees, Ewan, Manning & Lee, and the drugs were still liable to seizure under execution; and, if 'so seized and sold, your findings should be for the defendants."

"The jury are instructed that, although they may find from the evidence that the plaintiff paid the sum of $200 to certain of the creditors of Jenkins, still, if they further believe from the evidence that at the time of said payment the plaintiff knew of the existence of other and further debts from the said Jenkins due to other creditors, and the payment of said sum was received by said creditors or the attorneys thereof, who are the defendants herein, with the understanding that plaintiff should not acquire any interest in said stock of drugs as a partner of said Jenkins until after all the debts of the said Jenkins were paid, and that the money received by the defendants, Ewan, Manning & Lee, was so received with that understanding, and that afterwards the plaintiff procured or induced the said Jenkins to convey a half interest in said stock of drugs, upon the consideration of the said wife's executing her note to her said husband for $100, and afterwards the plaintiff prepared and had Jenkins' wife to convey to him the half interest so sought to be acquired by her, such conveyance or attempted conveyance would be a fraud upon the rights of the creditors of Jenkins, and the plaintiff acquired no title to said

property, as against said creditors of Jenkins, and you will find for the defendants."

The defendants asked, and the court refused, other instructions; but, as they were inapplicable to the facts in this case, it is unnecessary to consider them.

The jury returned a verdict in favor of the plaintiff for $930, actual damages, and six per cent. interest thereon from the 15th of April, 1895, the date of the levy of the executions, and $250, exemplary damages; and the court rendered judgment accordingly. The defendants filed a motion for a new trial, and the court directed that a new trial be granted, unless the plaintiff remitted the exemplary damages and $230 of the actual damages, which the plaintiff did, and the court thereupon set aside the judgment rendered, and directed another to be entered in favor of the plaintiff against the defendants for $770.85, the amount of $700 and six per cent. per annum interest thereon from the 15th of April, 1895, and overruled the motion for a new trial, and the defendants appealed.

The jury obviously found that the sale by Jenkins to Heard of one half interest in the stock of goods, and the partnership between them, were made in good faith. Their verdict in this respect was sufficiently sustained by evidence. In the further consideration of the case we therefore will assume this to be a fact.

When Heard purchased the one half interest, and entered into the partnership with Jenkins, he acquired an equity to compel the application of the assets belonging to the partnership to the payment of the joint debts of the firm, and to have the surplus thereafter remaining applied to the debt due to himself on partnership account, and to an adjustment of balances and cross-demands between Jenkins and himself. 2 Bates, Partnership, § 820. After this, and upon a dissolution of the partnership, he was or would be entitled to one half of the assets remaining on hand. In recognition and enforcement of such rights and equities, the statutes of this state provide that, when the property of a partnership is levied upon to satisfy an execution against one of the partners, the officer shall not, by virtue of his levy, deprive the partners of the possession of the property levied upon, except for the purpose

of making an inventory thereof, and having the same appraised; and that, "upon the execution being returned by the officer that he had levied the same upon the property in which the debtor was ˙ * * * partner, and that the same was claimed by the other * * * partners, the execution creditor may proceed by equitable proceedings to subject to the satisfaction of his execution the interest of the debtor so levied upon." Sand. & H. Dig. § 3065. So, as Jenkins' interest in the assets of his firm was his proper proportion of the surplus of the whole after the payment of debts, including the amount due Heard, it is evident that this is all the officer holding the executions against him could levy upon, and that it could not be taken possession of and sold before it was ascertained and set apart by equitable proceedings in the manner provided by the statutes.

The loss of his individual interest in the assets of his firm was not the only damage suffered by Heard in the sale of the partnership property under the executions against Jenkins, but he was damaged by the loss of his equity to have the assets of his firm applied to the payment of the joint debts contracted by himself and Jenkins on account of their partnership, including the debt due to himself on the same account. The loss of this equity left Heard still individually liable for the joint debts, with less ability to pay. But this loss was suffered by both partners in common, and the action for damages incurred thereby should have been brought by both partners. This defect in parties to this action was, however, waived by the failure of the appellants to take advantage of it by demurrer or answer. Sandels & Hill's Digest, §§ 5718, 5720.

. The evidence was sufficient to sustain the judgment of the trial court as to the amount recovered by appellee. But appellants insist it should be reversed on account of the refusal of the court to give the instructions asked for by them. We do not think so. The bill of sale executed by Jenkins to Ewan, Manning & Lee to secure certain debts held by them for collection made no debt liens on the property described therein, except those it was given to secure. The verbal promise of Heard to Ewan, Manning & Lee to pay any other debts of Jenkins was without consideration and void; and, being void, could not

affect the sale by Jenkins to Heard or their partnership. The bill of sale did not affect the right of appellee to recover in this action. The evidence in this case does not show that any one of the execution creditors of Jenkins was secured thereby as to any debt he sought to collect by the seizure and sale of the property of Jenkins & Heard; and, if he was, he could not enforce the lien thereby acquired by execution. Then, again, Heard offered to pay Ewan, Manning & Lee the $95 remaining due on the debts secured by the bill of sale, and they refused to accept it unless he would pay other debts of Jenkins held by them for collection. He had a right to redeem the property he had purchased; and as long as he was willing and offered to do so, and kept his tender good, the lien could not be enforced by seizure and sale of the property.

The sale by Jenkins of his half interest in the assets of Jenkins & Heard to his wife, and her pledge to Heard to secure advances to be made by him on partnership account, did not affect Heard's right to recover in this action. He acquired no rights by the pledge in addition to the partner's lien or equity which he already had.

Finding no prejudicial errors in the proceedings of the trial court, its judgment is affirmed.

HUGHES and RIDDICK, JJ., concur.

BUNN, C. J., and WOOD, J., dissent.

[The following opinions on a rehearing were delivered June 17, 1899.]

RIDDICK, J. This was an action for damages caused by the seizure and sale of a stock of goods claimed by plaintiff, the facts of which are fully stated in the opinion of the court by Mr. Justice Battle. It is insisted on the motion to rehear that the court erred in giving to the jury the following instruction in reference to the measure of damages: "If you find for the plaintiff, you will assess the actual damages at the value of the property at the time of the seizure, with six per cent. interest thereon from the seizure up to this date, and such further sum as you will find from the proof the plaintiff has sustained from being deprived of his business."

As a general rule, the measure of damages in an action of this kind is the value of the property at the time and place of the conversion, with interest thereon from that time. *Kelly* v. *McDonald*, 39 Ark. 387; *Jones* v. *Horn*, 51 *ib.* 19. There is nothing shown here to take this case out of the general rule. The goods taken and converted were such as are generally kept for sale by druggists, and there is nothing in the evidence to show that they could not have been readily replaced by the purchase of other like goods in the market, thus preventing any stoppage of business. Under the facts of this case, plaintiffs cannot, in addition to the value of the goods and interest, recover for use of goods as for loss of profits. *Anderson* v. *Sloane*, 72 Wis. 566.

It is said on part of appellees that the complaint alleged that the seizure and sale of the stock of goods destroyed plaintiff's business; that this allegation, not being denied, must be taken as true. If we concede this statement to be correct, still, before any recovery could be had for loss of business, the amount of such special damages should be alleged and shown by evidence with some degree of certainty. We have nothing of the kind here. The value of the business said to be destroyed is not alleged, nor is there in the transcript any competent evidence of such value. There is in the complaint only the general allegation that the business was established and profitable, and that it was destroyed by the levy and the sale of the stock of goods. On the trial, the plaintiff was allowed, over the objection of defendants, to state generally that he was doing a good business, which was improving; that others were doing well in the drug business; and that he did not see why he could not do well also. This evidence, even if there were no other objection to it, was too vague and indefinite, and should have been excluded. But the circuit judge refused to exclude it, and, by the instruction above noticed, told the jury that, in addition to the value of his goods and interest, they should allow the plaintiff such further sums as the proof showed that he had sustained by being deprived of his business. Even if it were proper to allow damages for stoppage of business in this case, this instruction would still be erroneous; for it does not limit the damage for such loss to the time necessarily required for

replacing the goods seized by defendants, but leaves the jury free to assess damages for loss of profits for any length of time they might choose to fix upon, and was, when taken in connection with the evidence above noticed, calculated to mislead the jury, to the prejudice of appellant. The evidence and instruction as to loss of business were both, we think, improper; for, as before stated, in the absence of any allegation or proof as to special damages, and where no grounds for exemplary damages are shown, the recovery in cases of this kind is limited to the value of the goods converted, with interest from the time of conversion. *Kelly* v. *McDonald*, 39 Ark. 387; *Jones* v. *Horn*, 51 *ib*. 19; *Ingram* v. *Rankin*, 47 Wis. 406; *Anderson* v. *Sloane*, 72 Wis. 566.

This point was not overlooked in the former consideration of the case, but at that time we were of the opinion, taking into consideration the amount of the verdict, the remittitur required by the circuit judge, and all the evidence, that no prejudice resulted from the instruction noticed. The question was not discussed in the former opinion, for the reason that a difference among the judges in regard to the decision of the case arose on other points, which were discussed at length, but, there being at that time no disagreement on this point, it was passed without discussion. I concurred in the former opinion delivered in this case, and find no reason to change on any of the questions discussed therein, but a further consideration of the question has convinced me that the instruction above noticed was not only erroneous but prejudicial. As I am not able to say what effect it had upon the verdict of the jury, I think it safer to reverse and remand for a new trial.

For the reasons above stated, the judgment is reversed, and cause remanded for a new trial.

WOOD, J., concurs, and BUNN, C. J., concurs also, but for reasons stated by him in separate opinion.

BUNN, C. J., (concurring). When this cause was decided by us in the first instance, I dissented from the opinion of the majority of the court, because the trial court had excluded certain evidence which went to make up a cause of fraud and overreaching on the part of the plaintiff, whereby he was en-

abled the more readily to prove his claim of being a partner with Jenkins and wife, and therefore to sustain his contention for damages on account of the levy and sale of the goods.

On this (the defendant's) motion for a rehearing, the instructions on the measure and manner of assessing damages being more particularly called to our attention, I find that there was no evidence to sustain actual damages for loss of business, etc., and, as against the officer making the levy and sale out of the defendants, no evidence upon which exemplary damages should have been assessed, and only inferentially against the others.

This instruction, or, rather, these instructions, as to damages, were erroneous. The remittitur entered by the court tended to cure the defect, and, if this was all the error in the case, I might concur in the idea that the error so corrected was not reversible, seeing that the jury apparently left out of consideration the damages for loss of business; but the error of the court as to the fraud of the plaintiff, and the exclusion of testimony relating thereto, constrain me to sustain the motion for a new trial on both grounds, as only in that way can justice be done, as I view it, and, indeed, taking all the circumstances under consideration, I cannot certainly say that errors in the instructions as to damages were not reversible errors. Had the court not erred as to the question of fraud, there would have been no occasion for these instructions as to damages, in my opinion.

BATTLE, J., (dissenting.)    Appellants ask for a rehearing of this cause upon two grounds:

First.    Because the court overlooked the error contained in an instruction given by the trial court to the jury in the following words: "By actual damages is meant such sum as will compensate for actual loss sustained; and, if you find for plaintiff, you will assess the actual damages at the value of the property at the time of the seizure, with six per cent. interest thereon from the time of seizure up to this date, and such further sum as you will find from the proof the plaintiff has sustained from being deprived of his business."

Second.    "Because the evidence was not sufficient to support the verdict of the jury."

It is unnecessary to say anything as to the second ground of the motion, in addition to what has already been said in the opinion of the court. Counsel for appellants have filed no briefs nor made any argument in support of their motion, but rely upon their brief which was on file when this cause was submitted for decision. No reason for additional comments has been suggested.

The motion seems to be based upon the belief that the instruction copied in this opinion was overlooked by the court. I know of no reason for this belief, except the failure to make mention of it in the opinion of the court. In preparing that opinion, I carefully considered the instruction, and thought no specific mention of it was necessary. In speaking for the court, and referring to that and other instructions, I said: "Many other instructions were given, but it is not necessary to set them out in this opinion." Referring to these instructions and all other proceedings of the trial court, this court said: "Finding no prejudicial errors in the proceedings of the trial court, its judgment is affirmed."

I think the opinion of the court is correct, especially as to the instruction mentioned in the motion. The part of the instruction objected to is in these words: "And such further sum as you will find from the proof the plaintiff has sustained from being deprived of his business." In the opinion it is said: "The evidence does not show the damage suffered, further than the value of the goods sold." Inasmuch as the jury were told by this instruction to return a verdict in favor of the appellee for such damages as they found from the proof that he had sustained by the loss of his business, and the evidence did not show that he had sustained any, it is difficult, if not impossible, to see how it could be prejudicial.

The record in the case clearly shows that the appellants were not prejudiced by the alleged error contained in the instruction. In connection with it, the court instructed the jury as follows: "Exemplary damages are given by law as a punishment, and to deter others from the commission of like trespass. In order to justify exemplary damages, the sale and the conversion of the property must have been malicious, and the sale is maliciously made under the law if made without reason-

able cause to believe that it should be made under execution in hand; and if in this case you find (the) property to have been partnership property, and also find that Heard in writing notified the defendant, Graham, or his deputy in charge of his interests, and that, notwithstanding the notice, the goods were sold under execution, the law will imply malice, and you will, in your sound discretion and judgment, assess such sum as you see proper as exemplary damages." The evidence showed that the value of the goods sold was variously estimated at $400 and $1,400, and that the goods were invoiced, by the person selected by the constable to appraise them, at $930.06. The jury returned a verdict in favor of the appellee for $930, actual damages, and six per cent. interest thereon from the 15th of April, 1895, the date of the levy of the execution, and $250, exemplary damages; and the trial court compelled him to remit the exemplary damages and $230 of the actual. Why did they return a verdict for $930 for actual damages? Manifestly, because the goods were estimated to be worth that much by the persons selected by the court to appraise them. If so, they found that the $930 was the value of the goods, and that that was the damage sustained by the loss of the same. This is further evidenced by the fact that the court instructed the jury that, if they found for the appellee, they would assess his damages at the actual value of the property sold and six per cent. interest thereon from the time of the seizure thereof, and the fact that they were not instructed to allow any interest on any other damage, and by the fact they returned a verdict for $930 and six per cent. interest thereon from the time of the seizure. But it has been said that they might have been induced, by the objectionable part of the instruction, to estimate the actual damages at $930. This is an unreasonable assumption. They were told by that part of the instruction not to allow the appellee any damages for loss of business unless they found from the proof that he had sustained such loss. The evidence did not show that he had. There was no cause in the instruction for the prejudicial effect attributed to it; and the jury manifested no disposition to travel beyond the instruction of the court to increase the actual damages of the appellee, as is shown by the fact that they could have found the actual value of the goods

sold to be $1,400, according to the evidence, instead of $930.

In assessing the actual damages at $930, did the jury intend to compensate the appellee for loss of business in addition to the value of the goods sold? I think not. There was no occasion for them to cover up an award for such loss by the assessment of $930, without evidence to sustain them in so doing, when they could have found the actual value of the goods to be a much larger sum. Neither did they do so. The court instructed them that if they found the "property to have been partnership property, and also found that Heard, in writing, notified the defendant, Graham, or his deputy in charge, of his interest, and that, notwithstanding the notice, the goods were sold under execution, the law will imply malice," and they might return a verdict for exemplary damages in such sum as to them might seem proper. In response to this instruction, the jury returned a verdict in favor of appellee for $250. This sum was awarded as a punishment of appellants for depriving appellee of his business. The return of the verdict for $930 could not have been the result of any prejudice of the jury against appellants on account of such loss. If there was any, it found full gratification in the return of the verdict for $250. The award of $930 for actual damages, as appears from the record, was based solely upon the invoiced value of the goods sold.

I think the motion should be denied.

HUGHES, J., concurs with me in this opinion.