## Tipton *v.* Phillips.

Opinion delivered February 13, 1928.

1. Parties—Waiver of defect.—Where objection to the incapacity of plaintiff to sue to set aside a judgment to which she was not a party was not raised until after the trial was concluded, the defect will be deemed to have been waived, since the incapacity of parties should be raised by answer or special plea at the beginning and not at the end of a lawsuit.

2. Judgment—Amendment.—A judgment will not be amended to reflect a judgment that was actually rendered by the court, unless the testimony is clear, decisive, and unequivocal.

Appeal from Johnson Circuit Court; *J. T. Bullock,* Judge; reversed.

*Jesse Reynolds,* for appellant.

*Hugh Basham* and *J. H. Brock,* for appellee.

Kirby, J. This is an action begun by Belle Phillips against Marshall Tipton, Edra Davis and Rex Davis, in the probate court of Johnson County, for a *nunc pro tunc* order correcting the judgment of the probate court. The plaintiff alleged, in substance, that the record of the probate court showed that on the 18th day of March, 1922, a judgment of that court was entered through mistake, showing that certain minors, towit, Edra and Rex Davis, were adopted by Marshall Tipton and Euphemia Tipton, whereas the judgment that was actually rendered was for the adoption of said minors by Marshall Tipton alone, and not by Euphemia Tipton. The plaintiff alleged that she was the mother and only heir-at-law of Euphemia Tipton, who had since died, in December, 1925.

Tipton answered, denying the allegations of the complaint, and alleged that Euphemia Tipton was one of the parties to the adoption of the Davis children, and that

the judgment of the probate court was correctly entered showing that she was the wife of Marshall Tipton and a joint party to the adoption proceedings with Marshall Tipton, and that the children were adopted in her name as well as in his.

The judgment of the probate court entered on March 13, 1922, recites that the Hon. J. J. Montgomery was the presiding judge. In the matter of the adoption of Rex and Edra Davis the following is the record entry of the judgment:

"*In re* adoption of Rex M. and Edra Davis, No. 45. On this day is presented to the court the petition of Euphemia Tipton and M. T. Tipton, stating that he desires to adopt Rex Murphy Davis and Edra Davis, minors, of the age of ten and twelve years, respectively. And it appearing to the court that the said minors are residents of Johnson County, that their father and mother are dead, and that they have no property, that they have been living with petitioner for nine years, it is therefore ordered by the court that the said minors be adopted by the said Euphemia Tipton and M. T. Tipton, and their names shall henceforth be Tipton, and they shall hold the same relation to the said petitioner as if they were their own children."

Fred Russell testified, in substance, that he was the clerk of Johnson County in 1922. He identified petition by M. T. Tipton for adoption of Rex Murphy Davis and Edra Davis, minor children, sworn to on March 18, 1922. Witness did not know whether Mrs. Tipton was present at the time or not. The petition was signed by M. T. Tipton, and was the only paper that was filed on that day. Euphemia Tipton never swore to the petition before witness. Another petition was introduced and identified by the witness, which reads as follows:

"In the Probate Court of Johnson County.— Euphemia—M. T. Tipson—Petition for adoption of Rex Murphy Davis and Edra Davis, minor children.

"Comes your petitioner, M. T. Tipton, and states that he is desirous of adopting Rex Murphy Davis and Edra

Davis, two minor children, who are residents of Johnson County, Arkansas, and aged ten and twelve years, respectively; that said children have no father and mother and no property; that they have been living with the petitioner for nine years, and that he thought said children had been adopted at the time he took them. Wherefore your petitioner asks the court to grant his prayer and adopt the said children.

"M. T. Tipton, Petitioner.

"Subscribed and sworn to before me this the 18th day of March, 1922.

"Fred Russell, County Clerk."

(On back) "No. 45. Petition for adoption of Rex M. and Edra Davis.

"3/13/22. Examined, and prayer granted, and said children ordered adopted. J. J. Montgomery, Judge."

The witness stated that the changes that now appeared on the last petition above copied, he thought, were made before the petition was presented to the court. They were all made at the time Tipton made the affidavit, and were not made after the case was heard by the court. Witness further testified that he did not think Euphemia Tipton was present, and she did not make the affidavit to the petition. If she had, witness would have had her to sign it. Witness was asked what caused him to put her name at the top of that petition, and answered that he did not remember, but his opinion was that, when Judge Montgomery changed Marshall to Tipton, that brought it to witness' mind that if it was Tipton in the style of the case it would be Tipton in the body of the petition, and witness changed that on his own initiative. Witness did not remember that Mrs. Tipton was in his office. He did not remember seeing any of them, and did not remember Tipton being there, but knew that he was because he swore to the petition.

J. J. Montgomery testified that he was county judge of Johnson County on the 13th day of March, 1922. He drafted the original petition in his office for Mr. Tipton. "Euphemia" was put in there after he had drafted the

petition. Witness' recollection is that he drafted the indorsement on the back of the petition at his office. After he drafted the petition, he gave it to Mr. Tipton, and told him to take it over to the clerk's office. The word ''Euphemia'' in the caption to the last petition set out above was inserted after it left witness' office. The first time witness knew about the word Euphemia being inserted in the caption was when Mr. Brock brought it over to witness and called witness' attention to it, about the time this action was begun—some time last summer. In making the indorsement on the back of the petition, to-wit, ''Examined, and prayer granted, and said children ordered adopted,'' signed by witness, it was witness' intention to make the order of adoption as it read at the time witness made the indorsement. The clerk prepared the form of the record entry. Mr. Russell was the clerk at that time. Euphemia Tipton was not present when witness made the order. Mr. Tipton came to witness' office one day, and said that he wanted to adopt these children, and to know if he could adopt them, and witness asked him some questions—where the children were living, and with whom, and he told witness that they were living with him, and had been for several years. Witness asked him about their parents, and thinks that he told witness that their parents were dead. Witness asked Tipton to bring the children down and let witness talk with them, and he said that he would. One day not long thereafter he came in and brought the children and said, ''Here are these children. You can ask them whatever you want to, or talk to them about the adoption.'' Witness sat down in his office and talked to the children about the adoption, and Mr. Tipton was with them, but Mrs. Tipton was not. They told witness that they wanted Mr. Tipton to adopt them. Mrs. Tipton never made any request for the adoption, and no one for her made such request.

On cross-examination witness stated that it was his idea to do what Mr. Tipton wanted about it. He was trying to comply with his wishes. He was asked if he

told Marshall Tipton that it was necessary for his wife to join in the petition, and stated that he did not remember; that he might have done it. Witness was asked the following question: "Did you tell him that the petition of one was the petition of both of them—that it was not necessary for his wife to sign it? A. No, I didn't tell him that; if I told him that it wasn't necessary for his wife to sign it, it was because he wanted to adopt them, and his wife wasn't known in it; that would have been the only reason I would have told him that." Witness did not remember whether Tipton asked him if he hadn't better have his wife sign it too. Witness examined the petition, as it had been changed, and said that none of the changes were made in the petition at the time he approved it, except the word "Tipton" was written by him with an indelible pencil. He did not write the word "Tipton" in ink, and did not write the word "Euphemia" or the word "Tipton" as it is written at the other places in the petition. Witness changed the word "Marshall" as it appeared in the original petition to "Tipton" as soon as he took it out of the typewriter, so as to make it read "Marshall Tipton." Witness explained that the court convened on Monday, which was the 13th, and if the petition was dated on the 18th, as it appeared, and was indorsed on the 13th, as it also appears, witness dated it back so as to make it appear that it was allowed on Monday, the day the probate court was in session. Witness' purpose was to do what Marshall Tipton wanted done at that time, and he told witness that he wanted to adopt the children. If he had come in and asked to have the children adopted by himself and wife, witness would have done it that way. Witness remembered very distinctly talking to the children and about Tipton bringing the children to let witness talk to them. Witness erased the word "Marshall" and wrote the word "Tipton" in pencil in the heading of the petition. Witness would not have included Mrs. Tipton in the petition unless she had been there to sign it. When a man and his wife adopted children, witness had them both present, and would not have

entered an order of adoption for both of them without both being present. When only one wanted to adopt, then witness did not require the other party to be present. Witness signed the probate record approving the same, but never did read every word in a record—all witness did was to see that all the cases were on record, but did not read the body of the order. The clerk was recalled, and testified that he wrote the record of the orders, and tried to write the same to state the facts as recited in the petition and granted by the court. Witness did not remember whether the approval on the back of the petition was on the same when it was brought to witness.

Tipton testified that he signed the petition for the adoption of the two minor children. It was prepared in the clerk's office by Judge Montgomery. Witness and his wife and the judge and Mr. Russell were present. The witness asked the judge if it was necessary for his wife to sign it, and he replied that it was not necessary. Witness' wife was present there with witness at the time. The children were not with them that day. Witness had brought them in before that to have Judge Montgomery talk with them, and, about a week or ten days thereafter, witness and his wife had them adopted. Witness' wife was present when her name was written in the petition. They came to town for that purpose. Witness' wife told the judge at that time that she wanted the children adopted—that she had no children of her own, and what little property they had they wanted these children to have it. That was his wife's request on that occasion. Russell, the clerk, swore witness to the petition about the 13th of March, the day that Judge Montgomery wrote the petition for witness. It was done right there in the clerk's office. The judge told witness that it was not necessary for witness or witness' wife to sign it; that the court's order would be sufficient. Witness thought it would be best to sign it, as that was the way he always did business. Witness' wife took the judge at his word, and did not sign it. Witness' wife stood there and heard the whole conversation.

The defendant offered to prove that the names of the family were written in the family Bible by Jim Stoveall, at the request of Mrs. Tipton. These names were as follows: "M. T. Tipton, Euphemy Tipton, Edra Tipton and Rex Tipton, adopted children of M. T. and Euphemia Tipton, in December, 1925." The court would not admit this testimony, to which ruling of the court the defendant at the time duly excepted.

The probate court denied the petition, and refused to amend the record, and the cause was appealed to the circuit court, where the testimony as above set forth was adduced. The circuit court found that the entry of the judgment of the probate court showing that the minors were adopted by Euphemia Tipton and M. T. Tipton was erroneous, and that such record of the judgment entry "should be amended by *nunc pro tunc* order so as to show that said minors, Rex Murphy and Edra Davis, were adopted by M. T. Tipton alone," and entered a judgment in accordance with its finding, from which is this appeal.

1. The fourth ground of appellant's motion for a new trial was that "the court erred in finding Mrs. Belle Phillips is entitled to maintain this suit to correct the record in a proceeding in the probate court of Johnson County, Arkansas, to which she was not a party." The question of defect of parties was not raised by the appellant in its answer, nor by special plea for that purpose. A defense of defect of parties should be raised by answer or by special plea to that effect at the beginning and not at the end of a lawsuit. Since the appellant did not plead a defect of parties until after the trial was concluded, he must be deemed to have waived such defect. *Yarnley* v. *Thompson,* 30 Ark. 399; *Cartwright* v. *Dennis,* 163 Ark. 503, 260 S. W. 424; *Summers* v. *Heard,* 66 Ark. 550, 50 S. W. 78; 51 S. W. 1057; *Arkansas Road Construction Co.* v. *Evans,* 153 Ark. 142, 239 S. W. 726; see also *Flanagan* v. *Drainage District No. 17, ante,* p. 31.

2. The issue on the application to correct the judgment of the probate court by *nunc pro tunc* entry is purely

one of fact as to whether or not the judgment as entered was the judgment actually rendered. We have fully set out the evidence on this issue, and it speaks for itself. It would serve no useful purpose to comment at length upon it.

We have reached the conclusion that the testimony is not clear, decisive and unequivocal to the effect that the record of the judgment of the probate court as originally written does not reflect the judgment that was actually rendered by that court. The proof therefore adduced by the appellee does not meet the requirement of the law as announced in our former opinions. See *Midyett* v. *Kirby*, 129 Ark. 301, 195 S. W. 674; *Murphy* v. *Citizens' Bank of Junction City*, 84 Ark. 100-106, 104 S. W. 187, 934, and cases there cited; *Sloan* v. *Williams*, 118 Ark. 593, 597, 177 S. W. 427; see also *McGuigan* v. *Gaines*, 71 Ark. 614, 77 S. W. 52; *Goerke* v. *Rodgers*, 75 Ark. 72, 86 S. W. 737; *Foster* v. *Beidler*, 79 Ark. 418, 96 S. W. 175; *Davenport* v. *Hudspeth*, 81 Ark. 166, 98 S. W. 699.

The judgment of the trial court must therefore be reversed, and the cause remanded with directions to the circuit court to affirm the judgment of the probate court.

WOOD, J., dissents.