STEWART, EXECUTRIX, *v.* WHEELER.

4-6797                                     163 S. W. 2d 316

Opinion delivered June 15, 1942.

536

*T. A. French,* for appellant.

*E. G. Ward,* for appellee.

HOLT, J. Wm. N. Wheeler died testate in July, 1930. A daughter, Nettie Stewart, was named executrix in his will, which was probated August 4, 1930. The bond of the executrix was approved and letters issued to her October 18, 1930. Shortly after Nettie Stewart qualified, and in 1930, she removed to Texas where she has since resided. She acted as executrix, however, until September 10, 1941, when she was removed and I. B. Langley was appointed to succeed her.

April 2, 1941, appellee, Mrs. J. R. Wheeler, niece of Wm. N. Wheeler, filed suit in the probate court of Clay county, seeking to establish a claim against the estate. She alleged in her complaint that she furnished board to Wm. N. Wheeler from January 1, 1928, to June 30, 1930, at the rate of $10 per month, or a total amount of $300, which she alleged he was due her at the time of his death.

She further alleged that she presented this claim to Nettie Stewart, the executrix, on October 18, 1930; that said claim was in proper form, duly itemized and verified; that Nettie Stewart allowed the claim; that it was duly filed with the clerk of the court, duly presented, approved and allowed by the probate court on October 20, 1930.

She further alleged that "the clerk failed and neglected to enter the order of said court therein in the records of said court," prayed that a *nunc pro tunc* order be made correcting the records so as to reflect the filing, approval and allowance of her claim of October 18, 1930, and, it appearing that all personal property of said estate

had been exhausted, a lien be declared on the following real property belonging to said estate: "South half of north half of block two; also all of the south half of said block two; all in Huston's Addition to the town of Piggott, Clay county, Arkansas," and that said property be sold to satisfy her claim.

Appellant answered denying every material allegation in appellee's complaint and specifically denied plaintiff's claim, denied that it had ever been presented to, approved, or allowed by the executrix, Nettie Stewart, and denied that any such claim was ever presented to and allowed by the probate court.

Upon a hearing, the trial court on parol testimony entered a *nunc pro tunc* order by which appellee's claim was reinstated and allowed, a lien was declared upon the real property, *supra,* and its sale ordered in satisfaction of appellee's claim. This appeal followed.

The primary question presented, and which is decisive of this cause, is: Did the trial court err in attempting to correct, by *nunc pro tunc* order, records alleged to have been made in 1930 and thus allow appellee's claim, reinstate it and direct its payment out of the proceeds of the sale of certain real property belonging to the estate? We agree with appellant's contention that this action of the court was error.

The record reflects that the trial court in making this *nunc pro tunc* order relied solely on parol testimony. A different judge was in office in 1930 when the orders and records affecting appellee's claim were alleged to have been made. Before such action of the court can be sustained on parol testimony, the evidence established in support of such action must be clear, decisive, convincing and unequivocal. A preponderance of the testimony is not sufficient. In *Dickey* v. *Clark,* 192 Ark. 67, 90 S. W. 2d 236, it is said: "The purpose of a *nunc pro tunc* order is to make the record reflect the transaction which actually occurred, and which is not reflected by the record because of inadvertence or mistake. Its province cannot be extended to make the record show what ought to have been done. In *nunc pro tunc* pro-

ceedings the record may be corrected or made to speak the truth upon parol testimony alone, but the evidence thus established should be decisive and unequivocal. *Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 674; *Tipton* v. *Phillips,* 176 Ark. 308, 4 S. W. 2d 507; *Tracy* v. *Tracy,* 184 Ark. 832, 43 S. W. 2d 539.''

The evidence before us reflects that there is no record evidence whatever in the office of the probate clerk of Clay county that the claim of Mrs. J. R. Wheeler, appellee, was ever filed, approved or allowed. No such claim was found in the files of that office. There is no record evidence that the executrix or the probate court approved or allowed the claim.

B. O. Dalton, county and probate clerk, testified: ''Q. Have you searched the claim record book to see if any claim has been filed as against the estate? A. Yes, I have, and find no claims in the claim record book. Q. Have you searched to try to locate a claim which Mrs. J. R. Wheeler filed and which ought to be in the files? A. Yes, I have. Q. Have you been able to locate it? A. No, I haven't.''

He further testified from the records in his office showing allowance against various estates, that on October 20, 1930, seven claims were allowed and duly recorded against other estates, but that no claim was filed, recorded or allowed against the estate of Wm. N. Wheeler by Mrs. J. R. Wheeler, or anyone else, on that date.

J. R. Wheeler, claimant's husband, testified that Wm. N. Wheeler owed his wife the amount of the claim at his death; that his wife prepared the claim; that he took it to the office of the then clerk, Mr. Langley, who told him that it was necessary to make the claim out on a regular form which Langley gave him. He then filled out the claim and ''Q. What did you do with the claim? A. I handed it to Mrs. Stewart and she read it and signed it and laid it on the desk. I said, is there any further need for me to stay here, or anything else to do? Mr. Langley said no. I just left and went back to my place

of business after he told me there was nothing else for me to do.'' This was on October 20, 1930.

He further testified: ''Q. After this claim was left with the clerk, you didn't know if the executrix made any payments? A. She wrote me a check for $100 on the board bill, but she didn't have any money in the bank to cover it. Q. Why didn't she? A. The bank closed at that time. The money was in the First National Bank at Rector. Q. Did you get any other credit? A. We owed the Bank of Piggott a balance of a note of $85 and she agreed to let the bank give us credit for this amount to be credited on the board bill. Q. When was the $100 check sent to you, before or after the First National Bank closed? A. It was about the time it closed. It was September or October that she mailed me the check; the same year Mr. Wheeler died. Q. Have you received any payments in any way since that time? A. Yes, sir. She had whoever was living in the house to pay me five months' rent of $5 per month. Q. You turned it over to your wife on that account. A. Yes, sir.''

E. G. Ward, appellee's attorney, testified that he prepared Mrs. J. R. Wheeler's claim and kept a carbon copy of the claim in his office; that he presented the claim to the probate court on October 20, 1930; that T. A. French, appellant's counsel, was probate judge at that time; that the judge indorsed, approved, dated and signed the claim in his presence on that date; he left the claim with L. B. Langley, the clerk, and at the request of L. B. Langley and T. A. French, he prepared an order to be entered. He delivered the original order to the clerk and kept a carbon copy. He heard nothing further in regard to the claim until this suit was filed April 2, 1941.

Bert Wheeler, witness for appellant and a son of Wm. N. Wheeler, testified that he was a surety on Nettie Stewart's bond, and (quoting from his testimony): ''Q. Did he (meaning Wm. N. Wheeler) stay around the restaurant of the plaintiff, Mrs. J. R. Wheeler? A. He stayed down there some. Washed dishes, carried in coal, made garden, and things like that. Q. Did he quit staying down or working around the Wheeler restaurant a

short time before he died? A. Yes, sir. . . . Q. At the time when he discontinued his stay or occupation there, did he make any statement in regard to the obligation of himself toward the Wheelers? A. Well, he came home that afternoon and came up to my house and talked to me and my wife. He said he wasn't staying down there any more, and that he had settled up with them and didn't owe them a cent. Q. Did he make any statement in regard as to how the settlement was made? A. He said Jim owed him $100 and told him to go ahead and take it."

Mrs. Nettie Stewart, executrix, testified that she received approximately $700 from the sale of ten shares of preferred stock in a Virginia corporation, the property of the estate, out of which she paid all claims presented against the estate, including $575 for expenses of last illness and burial expenses. The balance of the money was lost in bank failures.

She further testified that no creditors of Wm. N. Wheeler's estate filed any claims against the estate in written verified form; and that neither Mrs. J. R. Wheeler, her husband, J. R. Wheeler, nor anyone else for her, on the 18th day of October, 1930, or at any other time, filed any claim against the estate of Wm. N. Wheeler.

She further testified (quoting from her testimony): "Q. Did you make any payment to either J. R. Wheeler or to Mrs. J. R. Wheeler for claim for board against Wm. N. Wheeler, deceased, and if so to which one of them? A. Yes, to J. R. Wheeler. Q. If your answer to the above question is 'Yes,' state the circumstances and information from which you arrived at the amount to be paid, due and owing to Mr. or Mrs. J. R. Wheeler, by the deceased, Wm. N. Wheeler? A. Jim (J. R.) Wheeler told me my father owed him $300 for board—not room— he never roomed there. I told him that my father had told me before he died that he had let Jim have $200 and it had not been paid back. Jim acknowledged he got the money but said he had paid part of it back. I told him I had my father's word he hadn't and if he owed $300, to take $200 from that left $100. I gave him a check

for that amount and he took it in full payment, but the bank at Rector closed before he collected it. Then I paid it, as I told you before, on the note at the bank. There never was any other thing done about it. I never signed any kind of paper—after several years he started writing me he was so hard up he thought I ought to send him some more money. My father told me he paid Jim all along while he was down there during the day. He slept at home all the time.''

We deem it unnecessary to set out more of the testimony here. It suffices to say, that after a careful review of the record, we think the evidence falls far short of that character of oral testimony required to uphold the court's *nunc pro tunc* order, *supra*. Here appellee has waited more than ten years to establish and collect her alleged claim. Mr. W. E. Spence, and his father, R. E. Spence, attorneys who represented the executrix when she was appointed and qualified, and for some time thereafter, are both dead. Mr. Langley, the clerk at that time, does not appear as a witness. A search of the books and files of R. E. and W. E. Spence fails to disclose any evidence of Mrs. Wheeler's claim.

On the whole case, the order is reversed, and the cause remanded with directions to set aside and revoke the *nunc pro tunc* order in question, deny appellee's claim, and to proceed in conformity with this opinion.