CROW v. WATKINS.

1. TRUST:   *How established by parol evidence.*
An absolute deed cannot be converted into a trust for the benefit of a stranger by parol evidence, unless it be so clear and certain as to leave no well-founded doubt upon the subject.

2. SAME:   *Declaration of grantor after making deed.*
The declarations of a grantor, after parting with the title, about the title to the land and the consideration and purposes of the deed, are not admissible to convert an absolute deed into a trust for the benefit of a stranger.

Crow v. Watkins.

APPEAL from *White* Circuit Court, in Chancery. Hon M. T. Sanders, Judge.

*Cypert & Sanders*, for appellant.

The consideration for the land having been paid by the estate of Travis Crow, and the deed being taken in the name of the widow of Travis Crow, a resulting trust arose in favor cf appellant as the only heir of Travis Crow, deceased. *16 Ark., 255 ; 42 ib., 193; Perry on Trusts, sec. 128.*

Such trust arises from the fact that the money of the *cestui que trust*, and not that of the grantee, was used in the purchasing of the land. *40 Ark., 62; Hill on Trustees, 91; Story's Eq. Jur., 631.* The trust in this case arose by operation of law, and may be established by parol evidence. *(Ib., sec. 137.)* All competent evidence is admissible, such as the admission of the nominal purchaser, as well as the declarations of the administrator. *(Ib.)* Such proof may be admitted as well after the death of the nominal purchaser or the grantee as before, and may contradict the express declarations in the deed to the effect that the money was paid by the grantee. *Ib., sec. 138; Bisp. Eq., sec. 83; 9 Ark., 527; 42 ib., 511; ib., 193; 39 ib., 313; 18 ib., 79; 44 ib., 365.*

The declarations of the old men, Crow and Barnett, were admissible, and they show that the consideration came from the estate of Travis Crow. *Perry on Trusts, secs. 137–8; Bisp. Eq., sec. 83; 9 Ark., 527 ; 42 ib., 511; 42 ib., 193; 39 ib., 313; 18 ib., 79; 44 Ark., 365; Greenleaf's Ev., sec. 108.* See, also, *Milner v. Freeman, 40 Ark., 68.*

Mrs. Watkins, in conversation, admitted that the land was bought with money of Travis Crow's estate. *Banks v. Green, 35 Ark., 84.*

*W. R. Coody* and *J. W. House*, for appellee.

From the facts of this case plaintiff has no interest in the land, nor does any trust arise for his benefit.

*First*—An express trust cannot be created by parol. It can be manifested and proven only by writing. (*Mansf. Dig., sec. 3382; Perry on Trusts, secs. 75 to 80.*) The deed in this case was absolute, and cannot be disputed by parol evidence.

*Second*—A resulting trust cannot arise from the fact that it does not appear that one party paid the money and took the deed in the name of another, the parties being strangers to each other. (*Perry on Trusts, sec. 120.*) When any near relationship exists, or where a duty or obligation exists, a trust is never presumed, but the presumption of a gift or advancement arises, and must be overcome by clear and positive proof to the contrary. *Perry on Trusts, sec. 143; 40 Ark., 62; 41 ib., 301.*

J. B. Crow owed the estate nothing. The Confederate money received for the sale of the negro was worthless, and the administrator could have gotten credit for the money. *36 Ark., 396–7; 25 ib., 574.*

A trust cannot arise from a previous payment, any more than it can from an after payment, from the fact that a payment, either before or after, can have no reference to the sale or purchase. It must be an *actual payment of the money*, and result at the time, or not at all. *Perry on Trusts, sec. 133; 27 Ark., 86.*

*Third*—We presume that the plaintiff will not contend for an express or resulting trust in this case, but we thought it best to notice them. We presume that their contention will be that S. B. Barnett was the administrator of Travis Crow's estate, and that this Confederate money claim was assets of the estate in the hands of the administrator, and

that the lands were purchased with this trust fund, and thereby became part of the estate and subject to the claim of the heirs.

This proposition, if true, as a principle, would seem to be well established, but in this case it has no application.

1.   Because, as we have seen, J. B. Crow was under no legal obligation to pay the estate anything; nor did he legally owe it anything.

2.   Because the sale of the negro and the receipt of the Confederate money created no right of action against J. B. Crow, in behalf of the estate, which could have been sustained by the administrator.

3.   Because the administrator never regarded the land as part of the assets of the estate—never charged himself with them, or regarded it as in any way connected with the estate.

4.   If Barnett, as administrator, had a valid claim against Crow, who was solvent, and he failed to collect it, he would be responsible to the heirs upon his bond. *Jones v. Graham, 36 Ark., 383.*

5.   Because no money, or effects of any kind, ever came into the hands of Barnett, as administrator, except what he accounted for.

6.   Because the conveyance of the land was the consideration for the settlement, and if J. B. Crow was not allowed to give his daughter-in-law this land as a home, he would not settle at all.

7.   Because this conveyance was the sole and only reason of his agreeing to pay anything on this matter, upon which he was not bound to pay one cent.

8.   Because J. B. Crow was not bound to account for the Confederate money, and he could give or withhold what he pleased—all or part.   He could dictate his own terms of adjustment.   He could do what he pleased; and

having done this, his reasons cannot be questioned. He settled this way—he was not bound to settle any other. The estate made $500; Mrs. Crow got a home for herself and children, and who can deny his right to make choice of the recipients of his bounty?

We would be willing to admit that, if the estate had held the note of J. B. Crow, or a valid, enforcible claim against his estate, and the administrator had taken the lands on payment of the claim and taken the deed to himself, that possibly the heirs might have followed the land, as the trust might and probably would have attached to the lands received by the administrator in payment of this claim, as in the case of *Hill, Fontaine & Co. v. Coolidge, 33 Ark., 622.*

But that is not this case. Here was no trust fund—in fact, no fund at all; and it is only when a trust fund is converted into another species of property, by the trustee, that the original owner of the fund can follow it. *2 Story on Equity, sec. 1258; 30 Ark., 66.*

There is but little evidence in this case tending to establish a trust—in fact, none of any such character as can affect this deed and establish a trust. Before an absolute deed can be treated as a trust, upon parol evidence, it must be clear and conclusive, and of such a degree of certainty as to leave no well-founded doubt as to the fund or its character, or as to the intention of the parties; and more especially after a long lapse of time and the death of all the others in the transaction, as in this case. *Perry on Trusts, secs. 137-8-9; Crittenden v. Woodruff, 11 Ark., 82; 4 American Decisions, 66, Snelling v. Utterback; 59 ib., 88, Hollida v. Shoop; 57 ib., 606, Strimpler v. Roberts.*

COCKRILL, C. J. We cannot regard the evidence adduced to establish a resulting trust in the lands in dispute as suf-

1. TRUST: How established by parol evidence.

ficient for that purpose.   In order that parol evidence may have the effect of converting an absolute deed into a trust for the benefit of a stranger, it must be of such clearness and certainty of purpose as to leave no well founded doubt upon the subject.   *Robinson v. Robinson, 45 Ark., 481; Crittenden v. Woodruff, 11 ib., 82; Perry on Trusts, secs. 137-9.*

There is but little positive testimony to the point in the record of this case.   The appellant relies upon inferences drawn from the declarations and conduct of his two grandfathers, one of whom was the grantor in the deed which he claims should inure to his benefit, and the other was the administrator of his father's estate when the deed was executed.   The testimony goes back to periods eighteen years and more before the suit was instituted.

The deed was executed to the appellant's mother by her deceased husband's father, in 1860, and the claim now is, that the consideration paid for the conveyance emanated from the estate of her deceased husband, whose only heir is the appellant.

The facts are that the lands belonged to J. B. Crow, the appellant's grandfather.   His son, Travis Crow, the appellant's father, resided upon them with his family by permission of the elder Crow.   Travis Crow's chief estate consisted of one slave—an evidence of his father's bounty. In 1861 he enlisted in the army, leaving his wife in charge of the land and slave.   The war was flagrant and the slave became disobedient.   The husband's family and his wife's father thought it best to sell him.   The wife agreed to it, and with her sanction, J. B. Crow and her father sold him for $1300, and J. B. Crow received the payment in Confederate money, the only currency then in circulation. Travis Crow was afterwards wounded in battle and died without returning home.   When the war closed his widow's father, Barnett, administered upon his estate.   It

appears that he and J. B. Crow had some negotiations about a settlement of the amount received upon the sale of the negro, and in 1866 Crow paid Barnett $500 in United States currency, which he accounted for to the probate court as collected for Travis Crow's estate, on account of the sale of the slave. The theory of the appellant is, that it was agreed between Crow and the administrator that the latter should receive the land in question in payment of the balance due on the slave transaction, but that the deed was executed to the widow. No attempt is made to explain why the deed was so executed.

The widow remarried, inherited lands from her father, and in her lifetime made an equitable division of all she had, between her son, the appellant, and her husband, the appellee, executing deeds to each. The land in suit fell to the husband's lot. It had continued the home of the family, and the mother died there in 1883. Soon afterwards this suit was brought by her son against his stepfather, to have the deed executed in 1866 declared a conveyance made as in trust for his benefit.

J. B. Crow and Barnett were both dead when the suit was brought, and there was no witness offered to the settlement between them, or to the negotiation for the purchase of the land.

It may be conceded that if the fact were established, that the administrator settled a subsisting claim due to the estate by taking lands in payment, and causing the conveyance to be made to his daughter, that a trust would attach to the lands in favor of the heir, which equity would enforce against her or the appellee, who is a mere volunteer. *Atkinson v. Ward, 47 Ark., 533; Hill, Fontaine & Co. v. Coolidge, 33 Ark., 621.*

But the only evidence tending to show that the lands were conveyed by Crow in satisfaction of a claim due to

2. Declarations of vendor after parting with the title, not admissible

Travis Crow's estate, was the understanding or general impression to that effect of some of the Crow family. They had heard the two old men discuss the question many times. The precise nature of the declarations made by them about the matter, or when made is not certain from the evidence. But even a positive declaration about the title to the land, the consideration paid for it, or the purpose of the conveyance made by the grantor after he had parted with the title, could not be heard to control the terms of his deed. *Richardson v. Taylor, 45 Ark., 472; Robinson v. Robinson, ib., supra.*

While Barnett's subsequent admissions, though not a part of the *res gestae*, would be competent in a suit to charge him as administrator, it is difficult to see how they could affect the title to lands in which he never had an interest.

An admission by Mrs. Crow, made in the presence of the plaintiff and defendant, to the effect that the only consideration paid for the lands came from her husband's estate, was testified to by the plaintiff, and was competent evidence to prove the issue; but the defendant, with equal positiveness, denied that the admission was made, and their oaths neutralized each other.

It is indeed doubtful, from all the testimony, whether J. B. Crow can be regarded in any other light than the mere custodian of the Confederate money received for the slave. He did not sell the negro as his own, and it is not proved that he converted the proceeds of the sale to his own use. He acted in the matter for his son, with the sanction of his son's wife, when the emergency of war had thrown upon her, in her husband's absence, the necessity of action to guard his interest and her own safety. The emergency warranted the action she took, and J. B. Crow, in aiding her under the circumstances, was not legally bound to

make good the Confederate money which the issue of the war had rendered valueless. In making the subsequent settlement with the administrator there is nothing to show that he acted from a sense of legal obligation. The parties in interest were his son's widow and two children. The money paid to the administrator was received by the children, and Crow's whole action may be referred to his desire, or his moral obligation, to provide a home for the widow, and some means of support for his fatherless grandchildren. To say the least of it, the preponderance of the testimony is not in favor of the trust the appellant seeks to establish, and the decree is affirmed.