FOSTER *v.* BEIDLER.

Opinion delivered June 25, 1906.

1. RESULTING TRUST—SUFFICIENCY OF EVIDENCE.—To establish a resulting trust in land by parol, the proof must be full, clear and convincing. (Page 425.)

2. EQUITY LOOKS AT SUBSTANCE.—An execution sale of trust property, ostensibly for debts of the trustee but in reality for debts of the *cestui que trust,* will not be set aside at the instance of a privy of the latter, as equity looks at the substance, and not the form, of the transaction. (Page 427.)

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; reversed.

STATEMENT BY THE COURT.

This suit is by appellee against appellant Foster *et al.* to set

ARK.]         FOSTER *v.* BEIDLER.          ·   419

aside certain deeds. The complaint alleged that appellee is the only heir of H. M. Beidler, and reached his majority on July 31, 1897; "that H. M. Beidler some time before his death was the owner of a large landed estate in, at and near the city of Texarkana, Arkansas; that he became involved in domestic difficulties, ending in a separation and divorce from his wife, Amanda J. Beidler; that his business was that of speculator in real estate, and that he was threatened and feared that his former wife would bring an action against him for alimony, and thus tie up his property, and interfere with and prohibit his making sales and conveyances to those desiring to purchase, and to provide against which he allowed a large amount of his said property to go delinquent for the non-payment of taxes, and allowed the same to be sold to the State of Arkansas for the non-payment of taxes, and afterwards re-purchased it from the State, taking the title in the name of the defendant, J. H. Beidler, who was his brother, and who was to hold it for him; that, to facilitate sales by the said J. H. Beidler, he afterwards on December 22, 1887, executed deed to the property or the lands for the nominal consideration of $7,000, and on April 6, 1888, he executed a deed for certain other property to the said J. H. Beidler for the nominal consideration of $5,000."

Then follows a recital of other alleged facts to show that J. H. Beidler held the lands so conveyed to him in trust for H. M. Beidler. The complaint then alleges that J. H. Beidler conveyed certain portions of the property to two of his children without consideration and in violation of the alleged trust, and continues in substance as follows: "The said J. H. Beidler purchased large property in Battle Creek, Michigan, and executed his notes therefor, and on February 1, 1890, Joseph L. Foster brought suit against him, and caused an attachment to be levied upon the property heretofore referred to; that said Foster obtained judgment for a large sum in said case, and caused all of said property to be sold thereunder, and bought said property; that said sales were confirmed, and deed executed to the said Joseph L. Foster, who has made deed to numerous parcels of said lands, and on October 10, 1894, conveyed the remainder by quitclaim deed to his son, W. J. Foster, who now holds and controls the same; that all said conveyances should be set aside, save con-

veyances made by X. F. Beidler to innocent purchasers." The prayer was for the setting aside of conveyances and revesting the property in the plaintiff.

Appellant demurred to the complaint, which was overruled, and he saved his exceptions. Appellant then filed an answer, which, after certain denials of material allegations, is as follows:

"That a large property was purchased near Battle Creek, Michigan, by the said J. H. Beidler, who executed his notes therefor; that Joseph L. Foster, father of this defendant, now deceased, did bring suit against J. H. Beidler on said notes; attachments were issued and levied against the property described in the complaint, which was in the name of J. H. Beidler; said Foster obtained judgment, and said property was sold by order of the court under the attachment, which was duly sustained; and was also in part sold under execution; and both attachment and execution sales were confirmed by the court, and the sheriff of Miller County, Ark., executed to said J. L. Foster his deeds for said property; that, if it be true, as alleged in plaintiff's complaint, that H. M. Beidler was using his property and his brother J. H. Beidler's, name, for the purpose of selling his interest in the real estate to avoid his obligation to his wife for dower and alimony, as admitted in the complaint, it is also true that said Battle Creek, Michigan, property was purchased by H. M. Beidler in the name of J. H. Beidler, for the same purpose; and if, in fact, said J. H. Beidler was trustee for the Texarkana property, he was clothed by said H. M. Beidler with the title to the Texarkana property, whereby the said H. M. Beidler was enabled to purchase the Battle Creek, Michigan, property in the name of the said J. H. Beidler; and if it be true that the said J. H. Beidler was acting as trustee only, the Battle Creek, Michigan, debt was in fact the debt of H. M. Beidler, made in the name of J. H. Beidler, and upon the faith of the property held by the said J. H. Beidler; and this arrangement was made by the said H. M. Beidler with the said J. L. Foster, whereby the Texarkana property in the name of J. H. Beidler was property subject to the debt for the Battle Creek, Michigan, property by the said H. M Beidler, in the name of said J. H. Beidler; that the debt effected · by the said H. M. Beidler with the said Joseph L. Foster was

made by the said H. M. Beidler upon the faith of the Texarkana property, and it was intended that any and all of said Texarkana property would respond to the payment of the debt of the Battle Creek, Michigan, property, if the same was not paid at maturity. The defendant states that H. M. Beidler, and any one claiming under him, can not in equity now be heard to claim that the Texarkana property was not subject to the payment of said debt."

Defendant denies that any of the property sold under attachment or execution to J. L. Foster should be declared the property of plaintiff; denies that J. L. Foster or this defendant, W. J. Foster, or his vendees are not in position to claim title to said property; denies that they hold the same without right; then follow allegations of payment of taxes and setting up statute of limitations of seven years. There was a written stipulation that all the exhibits were to be considered in evidence, and that appellant had been in possession since the execution of the deeds under the judgment and execution in the case of J. L. Foster *v.* J. H. Beidler, which were exhibits, and that appellant and those under whom he claimed had paid all taxes since 21st of February, 1890; that all papers in the case of J. L. Foster *v.* J. H. Beidler, the attachment suit, were in evidence, and that J. L Foster purchased the land at attachment and execution sales and credited his judgment in the circuit court with amount of his bid.

The deposition of appellee, so far as material, showed that he was the son of H. M. Beidler, the deceased, and his only heir; that he had heard from his father, when a small boy, that his uncle had no interest in the property, and heard his father say to his uncle in Battle Creek, Michigan, "Now, brother, if anything happens to me, you will, of course, deed all the property to the boy;" and my uncle said: "Why, certainly, brother, there can be no trouble about that;" that no one was present; that he had been led to believe that his father's estate had been held from him, but could get no explanation from his uncle; he was a little over twelve years of age when his father died; can not give dates of the conversation which he stated occurred between his father and his uncle, but thinks it was only a few months before his father's death. He had been on friendly terms with his uncle all the time.

J. H. Beidler testified that he held the property in suit under

deeds which had been executed to him in trust by his brother, H. M. Beidler. He paid nothing for the property; did not know why it was put in his name. It was understood that he was to make deeds to whomsoever H. M. Beidler directed. He reconveyed the property to H. M. Beidler a few days before the latter's death, except that which he had caused to be deeded to purchasers before his death. He delivered the deeds to his brother before his death, and after his death the deeds and other papers were returned to him. He could not find the deed of the Texarkana property among the papers; says he told the plaintiff that he would do right by him, and did this he says because, being a nonresident, he could not administer on the estate, and thought he could take better care of the estate in the shape it was than to have it administered by strangers. When asked to explain why he and his agent continued in possession of the property conveyed to him by H. M. Beidler, and continued to sell and offer said property for sale after the death of H. M. Beidler, if he knew it did not belong to him, says he did this to meet expenses and outlay; explains his conveyance to his son, X. F. Beidler, by claiming it was for money advanced to pay taxes and traveling expenses, but makes no explanation of the conveyance to his daughter, Grace; does not undertake to account for the proceeds of any of his sales, except in the general way of saying they were consumed in paying taxes and expenses; says his son knew nothing about his having the deeds to any of H. M. Beidler's property until last summer, when J. D. Cook came to Lincoln; denies concealing them to defraud the plaintiff; says plaintiff had been angry with him for years on account of not being satisfied with his explanations about his father's estate. He admits mortgaging the property, long after H. M. Beidler's death, but says he did not do it for the purpose of defrauding any one; says: "At the time I thought it for the best." When asked what became of the money, says: "I do not know." When asked when plaintiff was informed and had knowledge of such mortgages, he answers: "I can not say; I do not know; never from me." Says the property at Texarkana was not conveyed to him until long after the debt was created on the Michigan property. He states that in the purchase of the Michigan property H. M. Beidler made the contract, and was the actual purchaser; that he permitted his

name to be used, and supposed Foster understood his position. That he merely lent his name; that all the arrangements were made by H. M. Beidler as to the title of the Michigan property and the execution of the notes in the name of J. H. Beidler, and for his own (H. M.'s) benefit; that he signed the notes because his brother requested it. That his guardian has supported plaintiff, but he is not familiar with the guardianship, and says he is not unfriendly to plaintiff, but that plaintiff has not been cordial, but unfriendly, for many years.

The decree of the chancellor in this case finds that the title to all said land is in the plaintiff, S. R. Beidler, and that J. L. Foster obtained no title by reason of his purchase or the proceedings in said case against J. H. Beidler, but S. R. Beidler was and is the rightful owner of all of said land, and entitled to the possession thereof in his own right; describes the land; finds that plaintiff commenced this action on May 5, 1899, and within three years after having reached his majority; and decrees possession of the premises to said S. R. Beidler and all cost against W. J. Foster, who prosecutes this appeal.

*Webber & Webber* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. A conveyance to defeat a wife's claim for alimony is fraudulent. Wait, Fr. Conv. § 70; Bigelow, Fr. Conv. 147; Bump, Fr. Conv. 505. This is an attempt by the heir of the grantor to set aside a fraudulent conveyance. He is bound by it. Bump, Fr. Conv. 444; Wait, Fr. Conv. § 121. See also 47 Ark. 301; 34 Ark. 392; 52 Ark. 171; *Ib.* 390; 26 Ark. 317; 51 Ark. 390; 67 Ark. 325; 57 Ark. 610.

2. Before a court of equity will set aside a judgment and execution at law, it must be made to appear that the party seeking relief has a meritorious defense. 50 Ark. 458; 52 Ark 80; 51 Ark. 34; 72 Ark. 106; 56 Ark. 546; 57 Ark. 602.

3. "To establish a resulting trust by parol, the evidence must be full, clear and convincing." 44 Ark. 365; 48 Ark. 169; 64 Ark. 156; 11 Ark. 82. In this case the evidence is not only not convincing, it is incredible and in every way discredited.

4. Appellee is barred by the statute of limitations. To begin a suit, not only must a complaint be filed, but summons

must be issued or a warning order entered. 10 Ark. 479; 20 Ark. 112; 47 Ark. 120; 62 Ark. 401. The filing of complaint in the clerk's office and publishing a warning order, without first entering it on the record, was not the institution of an action. This court found on former appeal that no warning order was entered as required by law. 71 Ark. 318. See also 55 Ark. 34. There was, therefore, no suit pending against appellant until he entered his appearance, which was more than 7 years after he acquired title, and more than 3 years after appellee reached majority. The former decision is the law of this case, and can not now be modified. 3 How. 413; 17 Wall. 283; 104 Fed. 647.

*J. D. Cook,* for appellee.

1. An incomplete sale, when a deed has been executed and the consideration has not been paid, and when there is no intention of gift or sale on time, makes a resulting trust in favor of the vendor, not for the purchase price, but for the land. 33 Ark. 762. A resulting trust may be proved by parol. 45 Ark. 472; 40 Ark. 146; 48 Ark. 169; 9 Ark. 518; 11 Ark. 82. As to the property forfeited for taxes, when it was purchased from the State by H. M. Beidler and paid for by him, and the deeds taken in the name of J. H. Beidler, this created a resulting trust which took the transactions as to all these transfers out of the statute of frauds. Sand. & H. Digest, § 4381; 9 Ark. 518; 30 Ark. 239. An estate purchased by one and deed taken in the name of another creates a resulting trust in favor of the purchaser. 80 Ala. 142; 58 Cal. 621; 40 Ark. 62; 63 Ga. 522; 11 Ill. 412; 34 Ind. 382; 17 Wall. (U. S.) 44.

2. Appellant Foster, having purchased at his own sale, receiving deed from the sheriff, and giving credit on his judgment for the purchase price, was not an innocent purchaser, and took subject to the trust. 44 Ark. 48; 30 Ark. 249; 31 Ark. 253; 58 Ark. 252; 71 Ark. 318.

3. Before this court will hold the acts of H. M. Beidler to be fraudulent, it must affirmatively appear that some valid claim for debt or alimony existed against him, and that he had disposed of so much of his property that the remainder would be insufficient to meet the just demands of creditors or claimants.

4. To begin an action, it is not necessary that the summons be served; the requirements are that the complaint be filed

and summons issued. In this case, the defendants being non-residents, the warning order takes the place of the summons. It has been held that an irregular, if not a void, writ, is a compliance sufficient to stop the running of the statute. 11 Ark. 334; 12 Ark. 760; 8 Ark. 313; 10 Ark. 122; 13 Ark. 36; 47 Ark. 12; 62 Ark. 401; 57 Ark. 459. See also 22 Ga. 359. The testimony shows such fraud and bad faith on the part of J. H. Beidler, the original trustee, as to suspend the running of the statute and begin a new time limit when the fraud was discovered by appellee. 24 Ark. 556; 46 Ark. 170; *Ib.* 25; 52 Ark. 76; 48 Ark. 248.

WOOD, J., (after stating the facts.) 1. If we should concede that the complaint stated a cause of action, still the proof in our opinion was not sufficient to establish a resulting trust. To establish a resulting trust by parol, the proof must be "full, clear and convincing." *Camden v. Bennett,* 64 Ark. 156; *Crow v. Watkins,* 48 Ark. 169; *Johnson v. Richardson,* 44 Ark. 365; *Crittenden v. Woodruff,* 11 Ark. 82. To sustain appellee's contention, we must set aside solemn instruments of writing purporting to convey title absolute which were entered upon record. To sustain his contention, we also, in legal effect, must set aside the solemn judgment of a court of record that was sustained against J. H. Beidler as the apparent owner, and operated upon his property because it appeared to be in his name, and because he, by various conveyances and visible acts of occupation and control, had held out to the world that he was the absolute owner of the property. A judgment is demanded of a court of equity that will have this effect partly upon the testimony of the very man whose conduct in dealing with the property appellee himself denounces as "basely fraudulent." Appellee must not expect a court of chancery to give credit to the testimony of a witness (not against his interest) who he himself says, perpetrated "grievous frauds upon him." No weight should be attached to the testimony of J. H. Beidler in favor of appellee in establishing any independent fact necessary for recovery. For the facts show that, if he was a trustee, he robbed his dead brother's estate and perpetrated "gross frauds" upon his own nephew, while he was yet a boy of tender years. The testimony of this witness is utterly unworthy of belief. His

conduct through all those years *under his deeds* are of infinitely more force than his words at the trial. "Tell me what a man has done under an instrument, and I will tell you what it means." Then the only other proof is a statement by appellee himself that "he had heard from his father, when a small boy, that his uncle had no interest in the property, and heard his father say to his uncle, 'Now, brother, if anything happens to me, you will of course deed all of the property to the boy; and his uncle's reply, "Why, certainly, brother; there can be no doubt about that." The deeds which purport upon their face to convey the property in fee for a valuable consideration should not be canceled upon this proof. It does not come up to the standard. *Goerke* v. *Rodgers,* 75 Ark. 72; *McGuigan* v. *Gaines,* 71 Ark. 614. The testimony that "he had heard from his father when a small boy that his uncle had no interest in the property," as it appears in this record, was not competent to establish the fact that his uncle had no interest in the property. The declaration of the grantor in a deed which purports upon its face to be for a valuable consideration, and to convey the absolute title, can not be used to impair or impeach the title of the grantee in the deed, or those claiming through or under him. It is not shown that this statement was made in the presence of the grantee, under circumstances which required of him to affirm or deny the statement.

The testimony of appellee that he heard his father say to his uncle in Michigan: "Now, brother, if anything happens to me, you will, of course, deed all the property to the boy," conceding it to be true, is too indefinite to establish a resulting trust for the property in controversy. Moreover, this alleged conversation between father and uncle is said to have occurred when appellee was only about twelve years of age. After more than a dozen years had passed he testified to his recollection of the conversation. But he gives no minutiæ, he details no circumstances showing why a conversation between two grown people about a grave business matter should have found a lodgment in his memory to abide for all those years. Such recollections are not impossible, but, without any accompanying circumstances calculated to impress such conversation upon the child's mind, it seems improbable, if not unnatural, that he should have remembered it. It is

not "the way of a child." Such testimony is inherently weak, and not entitled to the probatiye force necessary to overcome written instruments, and to destroy titles acquired through reliance thereon.

2. Appellee's witness, J. H. Beidler, says that H: M. Beidler himself contracted the debt for the property in Michigan. H. M. bought the property in his brother's name and had his brother to execute the notes therefor, evidencing the debt which is the foundation of appellant's right to the property in controversy. If this contention were true, then indeed appellee would be "hoist with his own petard," for equity looks to the *"real thing."* According to the contention, the property purchased in Michigan was the property of H. M. Beidler, and J. H. Beidler was merely acting as the trustee of his brother, and held it as such for him. Then, of course, equity would not per.mit the burden of paying for it to be shifted on to the shoulders of the trustee and agent. So, while the suit in attachment really progressed against J. H. Beidler, he being the ostensible debtor and owner of the property in Arkansas and Michigan, it was in reality the debt of H. M. Beidler, and his property that was subjected to its payment. So. if appellee's contention in this regard were correct, it would furnish the strongest reason of all, in equity, why he could not recover. The decree of the Miller Chancery Court is therefore reversed, and the complaint of appellee dismissed for want of equity.

McCULLOCH, J., concurs in the judgment.

BATTLE, J., not participating.